LA SOCIEDAD DE GANANCIALES, compuesta por ALBERTO ARROYO y GLORIA HAYDÉE GARCÍA, así como cada uno de ellos individualmente, demandantes y recurridos, *v.* JOSÉ M. LÓPEZ CINTRÓN, demandado y recurrente.

*Número:* R-84-454    *Resuelto:* 31 de enero de 1985

*Antonio V. Santiago Droz,* abogado del recurrente; *Rafael S. Fuentes Rivera,* abogado de los recurridos.

EL JUEZ PRESIDENTE SEÑOR TRÍAS MONGE emitió la opinión del Tribunal.

El 6 de septiembre de 1981 el recurrente, Sr. José M. López Cintrón, le causó daños con su vehículo a la bicicleta de un menor, hijo del Sr. Luis E. Vega y de su esposa, doña Rosa M. Correa. El policía Alberto Arroyo, primo segundo de la

señora Correa de Vega, le expidió días más tarde una citación al señor López Cintrón para que compareciera al Tribunal de Distrito, Sala de Peñuelas, en relación con el accidente. Mientras esto ocurría en el cuartel, el señor López Cintrón se dirigió allí al agente Arroyo en alta voz, en presencia de varios ciudadanos, y exclamó: "Éste es un caso fabricado, yo sé lo que tengo que hacer y hasta donde tengo que llegar." El recurrente repitió estas expresiones en casa de los padres del menor.

El señor López Cintrón fue denunciado por tres violaciones a la Ley sobre Vehículos y Tránsito y dos al Art. 118 del Código Penal (injuria y calumnia). Fue absuelto de todos los cargos. Una de las denuncias por infringir la Ley de Tránsito se archivó en consideración a haber pagado el señor López $150 por los daños sufridos por la bicicleta. El señor López Cintrón se querelló a su vez ante la Superintendencia de la Policía, imputándole al agente Arroyo persecución viciosa al radicarle las cinco denuncias. Tras la investigación administrativa correspondiente se determinó que la querella era inmeritoria y se exoneró al policía Arroyo por la Superintendencia. La apelación administrativa está pendiente.

El agente Arroyo demandó entonces por difamación al señor López. Tras el trámite correspondiente, el Tribunal Superior, por voz del Hon. Ramón E. Febus Bernardini, condenó al señor López a pagarle al señor Arroyo la suma de $15,000 por los sufrimientos y angustias morales y mentales sufridos por éste; $5,000 a la señora Arroyo por las angustias sufridas por ésta, más las costas y $2,000 por concepto de honorarios de abogado. El 9 de noviembre de 1984 dictamos orden de mostrar causa por la cual no debe revocarse la sentencia recurrida.

La cuestión central que plantea el caso es si un agente de la Policía es, dentro del contexto de este litigio, un "funcionario público" para fines de precisar el ámbito de la libertad de expresión bajo las disposiciones del Art. II, Sec. 4 de la Constitución de Puerto Rico. La definición se rige por consideraciones de índole constitucional. El hecho de ser "funcionario" o

"empleado" para otros propósitos jurídicos no es pertinente a esta indagación.

▇ En Puerto Rico rige la doctrina, proveniente de *New York Times Co.* v. *Sullivan*, 376 U.S. 254 (1964), de que no es difamatoria la publicación de un informe falso o de comentarios injustificados concernientes a la conducta oficial de un funcionario público, a menos que la información fuera publicada maliciosamente, esto es, a sabiendas de que era falsa o con grave menosprecio de si era falsa o no. *Torres Silva* v. *El Mundo, Inc.*, 106 D.P.R. 415 (1977). Hemos señalado que es imprescindible que el demandado abrigue al menos serias dudas sobre la certeza de la publicación y que ello debe ser objeto de prueba clara y convincente. La malicia real nunca se presume. *García Cruz* v. *El Mundo, Inc.*, 108 D.P.R. 174, 180–181 (1978).

Para resolver si estas normas son aplicables a la situación presente hay que explorar su razón de ser. En *New York Times Co.* v. *Sullivan*, supra, sin desatender el vital objetivo de defender la reputación personal, se recalcó la necesidad del debate robusto y abierto sobre la cosa pública, debate que, según señaló el Tribunal, "bien puede incluir ataques vehementes, cáusticos y a veces desagradablemente cortantes contra funcionarios gubernamentales y públicos". (Traducción nuestra.) Pág. 270. En *New York Times Co.* v. *Sullivan*, supra, pág. 283 n. 23, el Tribunal estimó que no tenía ocasión de "determinar cuán abajo en los escalafones menores del Gobierno podría alcanzar la designación de 'funcionario público' para propósitos de la regla . . .". (Traducción nuestra.)

En *Rosenblatt* v. *Baer*, 383 U.S. 75 (1966), el Tribunal comenzó esta exploración. Se afirmó allí que: "Cuando una posición gubernamental posee tal importancia aparente que el público tiene un interés independiente en las cualificaciones y ejecutorias del servidor público concernido, más allá del interés público general en las cualificaciones y ejecutorias de

todos los empleados gubernamentales, . . . se aplican los estándares de *New York Times* sobre malicia." (Traducción nuestra.) Pág. 86. A continuación se añade: "La posición del empleado debe ser tal que invite el escrutinio público y la discusión de la persona que la ocupe. . . ." (Traducción nuestra.) Págs. 86, 87 n. 13.

■ Tanto a la luz de *Rosenblatt* v. *Baer*, supra, como de las constituciones estatales concernidas, diversos tribunales han considerado la cuestión principal que nos ocupa. La abrumadora mayoría extiende a los agentes policiacos la doctrina de la malicia real. Véanse entre muchos otros: *Smith* v. *Russell*, 456 So. 2d 462 (Fla. 1984); *Willis* v. *Perry*, 677 P.2d 961 (Colo. App. 1983); *Gray* v. *Udevitz*, 656 F.2d 588 (10mo Cir. 1981); *Shafer* v. *Lamar Pub. Co., Inc.*, 621 S.W.2d 709 (Mo. App. 1981); *Moriarty* v. *Lippe*, 294 A.2d 326 (Conn. 1972); *Angelo* v. *Brenner*, 406 N.E.2d 38 (Ill. App. 1980); *Roche* v. *Egan*, 433 A.2d 757 (Me. 1981); *N.A.A.C.P.* v. *Moody*, 350 So. 2d 1365 (Miss. 1977); *La Rocca* v. *New York News, Inc.*, 383 A.2d 451 (N.J. 1978); *Ethridge* v. *North Miss. Communications, Inc.*, 460 F. Supp. 347 (N.D. Miss. 1978) (policía encubierto); R. A. Smolla, *Let the Author Beware: The Rejuvenation of the American Law of Libel*, 132 U. Pa. L. Rev. 1, 69 n. 332 (1983). Según se expresó en *Gray* v. *Udewitz*, supra, pág. 591:

> . . . Street level policemen, as well as high ranking officers, qualify as public officials under the test of *Rosenblatt* v. *Baer*. . . . The cop on the beat is the member of the department who is most visible to the public. He possesses both the authority and the ability to exercise force. Misuse of his authority can result in significant deprivation of constitutional rights and personal freedoms, not to mention bodily injury and financial loss. The strong public interest in ensuring open discussion and criticism of his qualifications and

job performance warrant the conclusion that he is a public official.

Las consideraciones citadas se aplican también a la realidad puertorriqueña. El agente policiaco en este pleito era un funcionario para fines del derecho de difamación. Estaba obligado en consecuencia a probar, lo cual no hizo, que las expresiones del recurrente fueron motivadas por malicia real.

■■■ Se habrá observado que al referirnos al agente policiaco en el párrafo anterior añadimos la frase "en este pleito". Ello se debe a que desde *Torres Silva* v. *El Mundo, Inc.*, supra, este Tribunal ha ido desarrollando un enfoque funcional en este campo. Nuestra atención no se ha concentrado tanto en el análisis abstracto del *status* de la persona afectada como en el contexto específico en que se da la controversia: la naturaleza de la declaración alegadamente difamatoria, el auditorio a que se dirige, los intereses que se sirven o vulneran y la relación funcional entre estos factores. Para la diferencia entre este enfoque y el tradicional, véase Smolla, *op. cit.*, págs. 68–77. Las imputaciones formuladas en este caso atañen a la conducta de un agente de la Policía, asunto de reconocido interés público. Las manifestaciones se hicieron en el propio cuartel y ante la familia afectada por el accidente, siendo reiteradas luego, mas en querella formal ante la Superintendencia. La reputación de los agentes policiacos, así como la de otros funcionarios y empleados públicos, no está a la merced de todo género de ataque, mas en las circunstancias presentes, el interés en el libre flujo de información sobre el proceder de un empleado de tan crítica importancia para el bienestar público claramente prevalece, sobre otras consideraciones, con el freno que representa la doctrina de la malicia real.

*Se expedirá el auto y se revocará la sentencia recurrida.*

El Juez Asociado Señor Rebollo López disiente y se reserva el derecho a emitir opinión al efecto en el futuro.

—O—

Opinión disidente emitida por el Juez Asociado Señor Rebollo López.

San Juan, Puerto Rico, a 6 de febrero de 1985

Aun cuando somos del criterio que las sumas de dinero concedidas por el tribunal de instancia en el presente caso deben ser modificadas por éstas ser "exageradamente altas", *Urrutia* v. *A.A.A.*, 103 D.P.R. 643 (1975), nos vemos obligados a disentir de la sentencia revocatoria emitida.

Mediante la opinión suscrita por una mayoría de este Tribunal se resuelve, en primer término y *sub silentio*, que los principios establecidos —*respecto a situaciones que envuelven libelo*— en los casos de *New York Times Co.* v. *Sullivan*, 376 U.S. 254 (1964) ; *Torres Silva* v. *El Mundo, Inc.*, 106 D.P.R. 415 (1977) ; y *García Cruz* v. *El Mundo, Inc.*, 108 D.P.R. 174 (1978) son aplicables a unas *manifestaciones verbales* alegadamente calumniosas. Como consecuencia de lo anteriormente expresado, se revoca la sentencia recurrida por cuanto adicionalmente se resuelve que el demandante recurrido, agente del orden público blanco de las imputaciones verbales, venía "obligado en consecuencia a probar, lo cual no hizo, que las expresiones del recurrente fueron motivadas por malicia real". (Op. Tribunal, pág. 117.)

I

Como expresáramos anteriormente, las decisiones antes citadas de *New York Times Co.* v. *Sullivan; Torres Silva* v. *El Mundo, Inc.*; y *García Cruz* v. *El Mundo, Inc.* son casos de libelo relativos a publicaciones periodísticas. Aun cuando es factible que los principios establecidos en dichos casos sean aplicables a *manifestaciones verbales*,[1] nos parece altamente

---

[1] Véase H. Brau Del Toro, *Los daños y perjuicios extracontractuales en Puerto Rico*, San Juan, Pubs. J.T.S., 1980, págs. 18–23.

cuestionable la forma y manera —meramente de un "plumazo"— en que la presente decisión establece dicha norma.

En segundo lugar, entedemos que este Tribunal no viene obligado a resolver que le es aplicable a un humilde policía en Puerto Rico la "doctrina de la malicia real" por el mero hecho de que una "abrumadora mayoría" de tribunales pertenecientes a distintas jurisdicciones en Estados Unidos de América así lo hayan resuelto. Aparte de que dichos foros pueden estar equivocados y que las circunstancias entre nuestro Puerto Rico y los estados de la Unión Americana pueden ser totalmente distintas, la decisión que hoy se emite es contraria al "ideal de lograr un derecho propio o netamente puertorriqueño más atento a nuestras necesidades y aspiraciones". *Cf. Valle* v. *Amer. Inter. Ins. Co.*, 108 D.P.R. 692 (1979); *Gierbolini* v. *Employers Fire Ins. Co.*, 104 D.P.R. 853 (1976); J. Trías Monge, *La crisis del derecho en Puerto Rico*, 49 Rev. Jur. U.P.R. 1, 9–19 (1980).

Por ello es que nos resulta difícil comprender cómo —meramente a base de la jurisprudencia citada en la decisión que hoy emite el Tribunal— un humilde policía raso destacado en un pueblo del interior de Puerto Rico puede alcanzar la característica singular de "figura pública" al grado que le sea aplicable el criterio de malicia real.

Un sector de nuestra ciudadanía, cada día con mayor frecuencia, ha venido atentando contra la vida de los miembros de la Policía de Puerto Rico y asesinando a mansalva a un creciente número de ellos. La decisión que hoy emite este Tribunal desafortunadamente le hace el camino más fácil a aquellos que, en adición, interesen "asesinar" la reputación de los miembros de la fuerza policiaca puertorriqueña.

## II

Aún aceptando —exclusivamente a los fines de la argumentación— la corrección jurídica de los principios establecidos por la decisión que hoy se emite, las *circunstancias particula-*

*res* del presente caso no justifican la acción revocatoria de la sentencia recurrida. Los hechos aquí en controversia se refieren a una imputación sobre alegada "fabricación" de un caso por parte del policía demandante respecto a un accidente de un vehículo de motor conducido por el demandado recurrente con una bicicleta perteneciente a un hijo menor de un pariente de los codemandantes.

Dicha imputación de "fabricación" fue hecha por el demandado, no meramente con "serias dudas sobre la certeza" de la misma, *García Cruz* v. *El Mundo, Inc.*, ante, pág. 181, sino con plena consciencia de que la imputación era falsa; hecho demostrado por la acción posterior del referido demandado al voluntariamente pagar por los daños sufridos por la bicicleta del menor; acción que dio base al archivo de una denuncia, "por transacción", de un delito menos grave que pendía contra éste. ¿Acaso ello no es suficiente para demostrar "malicia real"?

### III

La decisión de la cual disentimos no sólo revoca la sentencia recurrida sino que *desestima* la demanda radicada. Ello, a nuestra manera de ver las cosas, resulta ser injusto con la parte demandante y con el tribunal de instancia. Somos del criterio que lo procedente es —bajo el *supuesto* de que la decisión emitida sea jurídicamente correcta y que la prueba antes mencionada no sea suficiente para demostrar "malicia real"— devolver el caso al tribunal de instancia para brindarle una oportunidad a la parte demandante de presentar prueba, si es que la tiene, sobre la ahora requerida "malicia real".

Los abogados que practican la profesión en Puerto Rico, por lo general, están sobrecargados de trabajo. Realizan un esfuerzo loable por "mantenerse al día" leyendo no sólo la jurisprudencia de este Tribunal sino toda aquella emitida por otros foros que tienen inherencia sobre nuestra vida jurídica. No le podemos pedir, sin embargo, que sean "adivinos". A la

fecha de la vista en sus méritos del presente caso a nivel de instancia, la jurisprudencia vigente era "distinta" a la establecida por la decisión que emite ahora este Tribunal. La parte demandante cumplió con la jurisprudencia entonces vigente. Este Tribunal ha entendido procedente establecer un nuevo requisito respecto a esta clase de situaciones. Lo justo es brindarle una oportunidad a dicha parte demandante para que, si cuenta con dicha prueba, presente la misma. El no hacerlo representa una injusticia no sólo con la parte demandante sino que igualmente con el tribunal de instancia que resolvió el caso de acuerdo con el derecho entonces vigente.

Disiento, en resumen, no sólo porque somos del criterio que la norma establecida es errónea en derecho, sino porque aún en el supuesto de que dicha norma sea jurídicamente correcta, la misma es aplicada erróneamente en el presente caso.