*1062 TEXTO COMPLETO DE LA SENTENCIA
Comparecen ante nos, Ariel Alvira Infante et seq. (apelantes), [1] quienes solicitan que revisemos una Sentencia Sumaria Parcial de 22 de julio de 2009, notificada el 24 de julio de 2009, que emitió la Hon. C. Heydee Pagani Padró, Jueza del Tribunal de Primera Instancia, Sala de San Juan (TPI). Mediante el referido dictamen, el TPI desestimó la demanda por difamación que presentaron los apelantes en cuanto a los codemandados, y aquí apelados, Madifide, Inc. y Alex Delgado (Noti Uno).
*1063 Inconformes, los apelantes presentaron sendas solicitudes de reconsideración. En síntesis, plantearon que no habían tenido la oportunidad de completar un descubrimiento de prueba cabal; pidieron que se celebrara una vista en la que se dirimiera el cumplimiento de las partes con el descubrimiento de prueba; también solicitaron tiempo adicional para responder y presentar planteamientos adicionales tomando en cuenta la prueba, que a juicio de aquéllos, faltaba por descubrir.
El TPI no acogió la solicitud de reconsideración de los apelantes. En una primera orden, destacó que ya había concedido múltiples oportunidades a los apelantes para llevar a cabo su descubrimiento de prueba. Expresó que había celebrado varias vistas para pautar procedimientos, ello, en respuesta a la actividad de mociones generadas en el caso, en su mayoría, por los apelantes. Comentó el TPI que ya el expediente del caso contaba con 12 tomos. Finalmente, enfatizó en que tuvo ante su consideración todos los elementos suficientes para resolver la demanda contra Noti Uno mediante sentencia sumaria parcial. Mediante una segunda orden reiteró su determinación de no acoger la petición de reconsideración.
Posteriormente, los apelantes acudieron ante nos mediante apelación. Señalaron que el TPI erró: (1) al desestimar su demanda sin que se completara un descubrimiento de prueba cabal; (2) al haber determinado que la noticia que difundió Noti Uno no era referente a los apelantes; (3) al haber determinado que los apelantes debían ser considerados como funcionarios públicos; (4) al determinar que a Noti Uno lo cobijaba la defensa de reportaje justo y verdadero; (5) al concluir que no existían controversias de hechos materiales que ameritaran ser dilucidadas enjuicio plenario; y (6) al determinar que para que exista libelo tiene que haber una publicación escrita.
En reacción al escrito de los apelantes, compareció con sus alegatos Noti Uno y la Procuradora General en representación del Estado Libre Asociado de Puerto Rico (ELA), y los codemandados, Ledo. Pedro Toledo Dávila (ex superintendente de la Policía de Puerto Rico), Edwin Rivera Merced (Comandante de la Policía de Puerto Rico) y Luis A. Aponte Rodríguez (Capitán de la Policía de Puerto Rico). Luego de examinar los argumentos de las partes, junto con la prueba documental que aportaron, resolvemos. Adelantamos que confirmamos el dictamen apelado.
I
Esbozamos a continuación una breve relación de los hechos e incidencias procesales más relevantes para la resolución del caso.
Los apelantes son agentes unos y ex agentes otros de la Policía de Puerto Rico. Para el 2007, estaban adscritos a la División de Operaciones Especiales de Humacao (DOE). En síntesis, presentaron una demanda contra Caribbean International News Corp. (periódico El Vocero); Noti Uno; el ELA y los oficiales de alta jerarquía de la Policía que se mencionaron antes. Alegaron que el 29 de agosto de 2007, El Vocero publicó en primera plana que a los agentes de operaciones especiales de Humacao les habían ocupado armas y drogas que tenían en sus armarios.
Los apelantes comentaron que con la noticia, se publicaron también fotos donde aparecían armas, municiones y droga, aunque tales fotos correspondían a una intervención ajena a los hechos relacionados al caso. Más aún, alegaron que en la noticia se detallaron las armas que alegadamente se les había ocupado (unas de alto y otras de bajo calibre), la droga alegadamente ocupada, más se indicó que se ocupó parafernalia y productos para preparar y embalar sustancias controladas.
Los apelantes adujeron que en la noticia, El Vocero publicó que los apelantes podían enfrentar un proceso criminal. También, que el artículo sugirió que por el suceso, el Director de la DOE de Humacao había sido fulminantemente trasladado. Entre otros asuntos, destacaron que en el reportaje se incluyó los nombres de todos ellos, agentes de la DOE. Alegaron que la noticia no cumplía con los requisitos de la doctrina del privilegio de *1064 reportaje justo y verdadero y que El Vocero había difundido información difamatoria mediando negligencia y malicia.
Por otro lado, alegaron que Noti Uno repitió la información publicada por El Vocero, esto es, que a los agentes de la DOE de Humacao se les había ocupado armas y droga en sus armarios. Adujeron que Noti Uno no corroboró tal información antes de difundirla. Indicaron que el entonces Superintendente de la Policía, Ledo. Pedro Toledo, fue entrevistado por Noti Uno, y que éste expresó que no tenía la información detallada sobre los hechos, que, más bien, estaba esperando el informe final del Comandante de la Policía.
Según los apelantes, el ex superintendente expresó que al momento no sabía si lo que se había ocupado eran envases o bolsas vacías. Aún así, indicaron, Noti Uno continuó repitiendo que le habían ocupado armas y drogas a los apelantes en sus armarios. Tal actuación, a juicio de los apelantes, fue negligente y maliciosa. Comentaron que la cobertura noticiosa de Noti Uno fue parcializada; que dicha emisora radial, al igual que El Vocero, difundió la información sin antes corroborar con una fuente fidedigna, y que tal información constituyó libelo y calumnia.
En cuanto al ELA y los altos funcionarios de la Policía, lo apelantes alegaron que Noti Uno y El Vocero adujeron que fueron ellos sus fuentes de la información alegadamente difamatoria que se difundió. Adujeron que la orden que dieron los referidos funcionarios de la Policía para el registro de sus armarios era ilegal y que constituía una violación a su derecho a intimidad. Señalaron que éstos difundieron información a la prensa sin la debida corroboración, lo cual causó graves daños a la reputación de los apelantes. Aseguraron haber sufrido daños a su salud emocional y física; haber sido objeto de represalias por la Policía de Puerto Rico; y haber sufrido pérdida de ingresos tras algunos verse motivados a renunciar tras la situación. En fin, reclamaron ser compensados por daños morales y angustias mentales.
Presentada la demanda, las partes codemandadas presentaron sus contestaciones. Valga destacar que en cuanto a los altos oficiales de la Policía codemandados y el ELA, aceptaron que a fin de cuentas, tal como alegaron los apelantes, no se les ocupó drogas ni armas de fuego en sus armarios. Adujeron, no obstante, que sí se les ocupó evidencia que denotaba faltas administrativas. Por otro lado, negaron que en la entrevista el Ledo. Pedro Toledo hubiera indicado que no podía asegurar o corroborar que se hubiese ocupado armas y drogas. [2]
Por otro lado, en el expediente del caso obra una transcripción de una grabación de una entrevista que Noti Uno le realizó a Ledo. Pedro Toledo. El 29 de agosto de 2007, a las 6:38 a.m., el Ledo. Pedro Toledo participó de un segmento de entrevistas de Noti Uno. Se le pidió que diera información relacionado a la ocupación de armas y drogas “en Operaciones Especiales de Humacao”. En reacción, el Ledo. Pedro Toledo declaró lo siguiente:
“Bueno, déjame explicarte. La semana pasada, a raíz de lo que ocurrió en Mayagüez, nosotros dimos instrucciones a todos los comandantes de área que analizaran todas y cada una de estas unidades especializadas y se analizaran los expedientes de todos los miembros de esas unidades para aseguramos que personas que tuvieran problemas de conducta repetitiva, de abuso, alegaciones de abuso, problemas psicológicos, inclusive imputaciones de fabricación de evidencia, fueran removidos de todas esas unidades y que en casos que hubiera problemas de... caos de... alegaciones de violencia, se enviaran a psicólogos, etcétera, para bregar con el problema que estamos viendo en esta semana.
Ayer, el Director Operacional de Humacao hizo una inspección en unos lockers allí en la decisión y encontró cinco armas de fuego que habían sido incautadas en el 2004 y parafemalia y alguna droga. [...]
*1065 ¿Por qué estaba esa droga allí y esas armas allí? Pues nosotros, obviamente, yo le he pedido un informe al Comandante de Área para que nos informe qué fue lo que ocurrió, cuál es la razón. [...] Yo he dicho anteriormente que nosotros tenemos una serie de casos de conducta indebida de policías que hemos estado coordinando con el NIE, con el FBI e internamente, pero [...] ante todo lo ocurrido en Mayagüez, nosotros vamos a sacar a todas estas personas.” [3]
Seguido, el entrevistador comentó, y el Ledo. Pedro Toledo reconoció, que habían hablado con él unas semanas atrás, y él había adelantado que se iban a realizar operativos en la uniformada. El Ledo. Pedro Toledo comentó en relación a lo anterior:
“Correcto. Ahora, quiero informarte y es importante que el pueblo sepa que nosotros estamos tomando estas medidas por eso mismo, porque no podemos permitir que continúe esta... de que la práctica que ocurrió en Mayagüez no podemos permitirla. Y, de hecho, ayer yo ordené que el sargento que está a cargo de esa unidad fuera removido. Porque irrespectivamente de que se haya cometido algún acto contra un ciudadano, el mero hecho de que esa evidencia esté allí y no en un cuarto de evidencia es irregular y violatorio del Reglamento.” [4]
Posteriormente, se le pidió que aclarara si la intervención con los agentes de Humacao había sido iniciativa suya como superintendente de la Policía. El Ledo. Pedro Toledo contestó que eso era correcto. Indicó que “[f]ue iniciativa nuestra, fue a instrucciones nuestras en todas las unidades, todas las unidades están pasando por esa situación”. Luego, se le preguntó si lo que se le ocupó dentro de los lockers a los agentes fue envases vacíos, bolsas plásticas vacías o “si tenían material”. A lo cual, Ledo. Pedro Toledo respondió:
“Bueno, esa información detallada [...] no la tengo, debe estar en el reporte. Por lo menos me han informado que habían unas cápsulas de crack y había unos papeles donde se enrolla marihuana. ¿Qué otro tipo de material? No lo sé. Pero, obviamente, en el día de hoy, yo con mucho gusto, más tarde, te lo puedo decir, porque estoy esperando el informe final del Comandante.” [5]
Haciendo referencia a esta entrevista, Noti Uno presentó una moción de sentencia sumaria. En términos generales destacó que no había controversia en relación a los siguientes hechos: el Ledo. Pedro Toledo se comunicó telefónicamente con Noti Uno para hacer unas declaraciones referentes a los registros efectuados en los casilleros de un cuartel de la policía de Humacao; indicó que como resultado de la inspección se encontraron armas de fuego y alguna droga; que él ordenó que el sargento a cargo de la DOE de Humacao fuera removido; que Noti Uno no mencionó los nombres de los apelantes, salvo por uno de ellos, Ángel Adrovet Burgos, que también ofreció declaraciones para Noti Uno. Agregaron que el contenido de la entrevista fue estipulado por las partes.
Valga mencionar que en el párrafo 17 de su Contestación a Demanda Enmendada, el Ledo. Pedro Toledo negó la alegación número 30 de la Demanda Enmendada. Dicha alegación expresaba que el Superintendente de la Policía de Puerto Rico, Ledo. Pedro Toledo, fue entrevistado el 29 de agosto de 2007 a las 6:40 a.m. en Noti Uno, y expresó que no podía asegurar ni corroborar que se hubiese ocupado armas y drogas a los apelantes. [6]
Por otro lado, en su oposición a la sentencia sumaria, los apelantes expresaron lo siguiente. Adujeron que había controversia de hechos, pues se-había expresado que la intervención se efectuó en los casilleros de los apelantes, y no todos ellos, según se alegó, tenían casilleros en la comandancia; que Ledo. Pedro Toledo indicó en la entrevista que no podía precisar si unas cápsulas que se ocuparon estaban vacías o no porque no tenía la información, que, más bien, estaba esperando por el informe final del Comandante; y que estas expresiones de Ledo. Pedro Toledo creaban duda razonable sobre si realmente se había ocupado drogas o no. Los apelantes aseguraron que al haber asegurado Noti Uno que se había ocupado droga a los apelantes, actuaron de forma negligente y con grave menosprecio a si la información era falsa o no. Destacaron, además, que la entrevista del *1066 apelante Ángel Adrovet, junto con las expresiones que otros de los apelantes hicieron ante otros medios noticiosos, apuntaban a que la información difundida era falsa.
En su escrito, los apelantes también alegaron que no debían ser considerados funcionarios públicos para efectos del análisis de un caso de difamación. Aseguraron que la publicación de la noticia cumplía con el requisito de identificación exigido por la jurisprudencia (que la publicación era referente y concerniente a los apelantes). Argüyeron que la cuña noticiosa hacía referencia directa “a la división de Operaciones Especiales de Humacao”. Comentaron que la noticia era:
“[...] suficientemente clara para entenderse se refería al menos a diez de los doce [apelantes] que eran miembros de esa división al momento de los hechos. Entendemos que un grupo de 24 personas es relativamente pequeño por lo que cualquiera de sus miembros puede demostrar que las alegaciones eran referentes o concernientes a él, independientemente se hubiese mencionado el nombre o no.”
Los apelantes agregaron que podían demostrar con prueba extrínseca que la publicación se refería a ellos. Tal prueba, indicaron, podía remitir a las expresiones que hicieron algunos radioyentes a Noti Uno o por las referencias que hizo la emisora a la información publicada en El Vocero. Insistieron que la información que difundió Noti Uno era difamatoria y negaron que tal información hubiera sido de conocimiento público antes de que Noti Uno la difundiese. Ahora bien, aclararon que “por error” habían admitido [en un requerimiento de admisiones] que la información se había publicado por otros medios antes de que Noti Uno la difundiera. [7]
Más aún, negaron que le asistiera a Noti Uno el privilegio del reportaje justo y verdadero. Ahora bien, reconocieron que las fuentes de información de Noti Uno fueron El Vocero, la estación de radio WKAQ y las declaraciones del Ledo. Pedro Toledo. También indicaron que de estas fuentes, la más confiable, la entrevista que ofreció el Ledo. Pedro Toledo. Insistieron, no obstante, que Noti Uno hizo expresiones que el Ledo. Pedro Toledo no vertió.
Advertimos que los apelantes insistieron en que aún no se había producido cierta prueba solicitada, en particular, la transcripción de más horas de la programación de Noti Uno para el 29 de agosto de 2007. Con la prueba que al momento obraba en el expediente, el TPI decidió resolver la petición de sentencia sumaria. Determinó que no existía controversia en cuanto a que: (1) la Policía de Puerto Rico efectuó un operativo en la DOE de Humacao, y la reseña noticiosa que difundió Noti Uno fúe posterior al operativo; (2) el operativo se realizó por miembros de la Policía de Puerto Rico, a instancias de oficiales del referido cuerpo, y además, tuvo lugar en las instalaciones donde ubicaban las oficinas del DOE de Humacao; (3) al momento del operativo, todos los apelantes eran miembros de la Policía de Puerto Rico; (4) el Ledo. Pedro Toledo, entonces Superintendente de la Policía, concedió una entrevista a Noti Uno, en la cual, declaró que durante el operativo en el DOE de Humacao, se había encontrado armas de fuego y alguna droga, más aún las partes estipularon el contenido de esa entrevista; (5) Noti Uno no mencionó los nombres de los apelantes cuando comentó la noticia, salvo por Ángel Adrovet Burgos, a quién se le mencionó por éste haber expresado su versión de los hechos en entrevista con Noti Uno; (6) el operativo fue reseñado por El Vocero, el mismo día, y antes de que Noti Uno divulgara la noticia o entrevistara a Ledo. Pedro Toledo, además, fue El Vocero el que mencionó los nombres de los apelantes; (7) otros medios de comunicación y de prensa difundieron la noticia, e incluso, el mismo día ■en.que se difundió la noticia, varios de los-apelantes hicieron declaraciones públicas para medios noticiosos televisivos; (8) las fuentes de información de Noti Uno fueron la entrevista al Ledo. Pedro Toledo, El Vocero y WKAQ; y (9) la Policía no presentó cargos contra los apelantes por los hechos objeto del caso.
En cuanto a su razonamiento, el TPI expresó que el operativo y sus hallazgos constituían un suceso de alto interés público, sobre el cual, los medios noticiosos tenían derecho a informar a la ciudadanía. Tomó cuenta de que la información que divulgó Noti Uno fúe corroborada por el Ledo. Pedro Toledo, entonces *1067 Superintendente de la Policía. El Ledo. Pedro Toledo indicó que se encontraron las armas y alguna droga en los casilleros de los agentes de la DOE de Humacao. Esa información, viniendo del Superintendente de la Policía, debía tenerse por oficial y revestida de un alto grado de confiabilidad. Más aún, destacó que al momento en que Noti Uno la difundió, ya la información era del dominio y conocimiento público.
El TPI concluyó que bajo estas circunstancias, debía tenerse la información ofrecida por Noti Uno como acreedora de la defensa del reportaje justo y verdadero. Destacó que independientemente de la veracidad de la información difundida, el reportaje constituyó una relación de la información que brindó el propio Superintendente de la Policía. Siendo ello así, indicó el TPI, no procedía la causa de acción de los apelantes contra Noti Uno.
Por otro lado, el TPI determinó que los apelantes debían tenerse por funcionarios públicos para efectos del derecho a reclamar por difamación. Ello suponía que debían evidenciar malicia real por parte de Noti Uno. No obstante, estimó que los apelantes no detallaron prueba clara, robusta y convincente que tendiera a demostrar que Noti Uno divulgó la información con conocimiento de que era falsa o que lo hizo con grave menosprecio a la veracidad o falsedad de lo aseverado.
Además de lo anterior, el TPI reiteró que no había controversia sobre el hecho de que Noti Uno no mencionó los nombres de los apelantes. Seguido, indicó que los apelantes fallaron en demostrar que las expresiones alegadamente difamatorias se refirieron a su persona de forma particular. Por último, llamó la atención al hecho de que los apelantes insistieron en que para que la información difundida por Noti Uno pudiera tenerse por libelosa, debía constar como publicación escrita. Por todos los fundamentos expresados, y en virtud de la Regla 43.5 de Procedimiento Civil, 32 L.P.R.A. Ap. Ill, R. 43.5, el TPI desestimó mediante sentencia sumaria parcial la demanda de los apelantes. De este dictamen, acudieron los apelantes ante nos.
Tomando en cuenta lo anterior, discutimos el derecho aplicable.
n
A
En Soc. de Gananciales v. López, 116 D.P.R. 112 (1985), se examinó si un agente de la policía debía considerarse funcionario público para fines de precisar el ámbito de la libertad de expresión bajo las disposiciones del Art. II, Sec. 4 de la Constitución de Puerto Rico. Dicho caso también abordó otros elementos relacionados a una causa de acción por difamación.
Se indicó en el citado caso que en Puerto Rico rige la doctrina proveniente de New York Times Co. v. Sullivan, 376 U.S. 254 (1964), de que no es difamatoria la publicación de un informe falso o de comentarios injustificados concernientes a la conducta oficial de una funcionario público, a menos que la información fuera publicada maliciosamente, esto es, a sabiendas de que era falsa o con grave menosprecio de si era falsa o no. Soc. de Gananciales v. López, supra, pág. 115; cita a Torres Silva v. El Mundo, Inc., 106 D.P.R. 415 (1977).
Se explicó que se requiere que el demandado haya abrigado serias dudas sobre la certeza de lo que alegadamente publicó, y que para demostrar que así lo hizo, se debe presentar prueba clara y convincente. Id. Se aclaró que la tendencia apuntaba a extender a los agentes policiacos {street level policemen, as well as high ranking officers) la doctrina de la malicia real. Id., pág. 116; citando a Rosenblatt v. Baer, 383 U.S. 75 (1966), y Gray v. Udewitz, 656 F.2d 588 (10mo Cir. 1981). En consideración a lo decidido en los citados casos de la esfera federal, el Tribunal Supremo tomó en cuenta las circunstancias particulares del caso ante su consideración, a saber, unas imputaciones formuladas contra un agente de la policía que estaban relacionadas a su conducta. Se concluyó que el interés en el libre flujo de información sobre el proceder de un empleado de tan crítica importancia para el bienestar público, claramente prevalece sobre otras consideraciones, *1068 con el freno que representa la doctrina de la malicia real. En ese caso, el policía promovente de la causa de acción por difamación debía probar que las expresiones alegadamente difamatorias fueron motivadas por malicia real. Id., pág. 117.
B
El demandante en un caso de libelo debe probar, en primer lugar, que la información publicada es falsa y que por causa de su publicación sufrió daños reales. Villanueva v. Hernández Class, 128 D.P.R. 618, 642 (1991). Aun siendo falsa la información, sin embargo, no hay derecho a ser indemnizado a menos que se pruebe, en el caso de una persona privada, que la imputación fue hecha negligentemente, según este concepto es entendido en el campo del derecho de daños y perjuicios. En los casos en que estén involucrados funcionarios públicos, por otro lado, el demandante debe probar, además, que la información fue publicada con malicia real, o lo que es lo mismo, a sabiendas de que era falsa o con grave menosprecio de si era falsa o no. Id., pág. 642. La malicia real no puede presumirse, por lo que es imprescindible que el demandado abrigue serias dudas sobre la certeza de la publicación y que esto sea objeto de prueba clara y convincente. Id., pág. 643.
C
Por otro lado, el derecho a la libertad de prensa y expresión, inclusive, ha ocasionado que sean un tanto distintas las normas que deben aplicar al momento de considerar en casos de libelo una moción de sentencia sumaria. Villanueva v. Hernández Class, supra, pág. 643. En el marco de nuestra jurisprudencia sobre libelo se ha expresado que aunque los tribunales vacilan en dictar sentencias sumarias, aún así se ha exigido a menudo una observancia más estricta de las disposiciones de la Regla 36 cuando la acción involucra los derechos de expresión de una demandado, ya que la prolongación de estos pleitos tiene un impacto disuasivo sobre el ejercicio de tales derechos. Id. Se ha expresado que el mecanismo de sentencia sumaria es una parte integral de la protección constitucional disponible a los demandados en este tipo de litigio. Id.
En casos de difamación, los factores a evaluarse al momento de dictarse sentencia sumaria son distintos. Id. Si el caso involucra figuras o funcionarios públicos, debe dictarse sentencia a favor de la parte demandada a menos que el tribunal determine, a base de declaraciones juradas, deposiciones u otra prueba documental, que la parte demandante puede probar la existencia de malicia real, en el sentido que se emplea el término de New York Times Co. v. Sullivan, supra. Id., pág. 644. En otras palabras, frente a una solicitud de sentencia sumaria, el demandante tiene el deber de producir prueba sobre hechos materiales respecto a los cuales no exista controversia real sustancial y que, de ser probados en un juicio plenario, establecería la existencia de malicia real por parte del periódico en la publicación de la noticia libelosa. Id., pág. 644.
En cuanto a los hechos particulares del citado caso de Villanueva v. Hernández Class, supra, se destacó que el tribunal de primera instancia fundó su negativa a dictar sentencia sumaria por la alegada existencia de controversias de hechos que a su juicio requerían ser dilucidadas en una vista plenaria. Id., pág. 645. No obstante, el Tribunal Supremo determinó que las alegadas controversias no eran reales sustanciales que recayeran sobre hechos materiales y que pudieran impedir la resolución sumaria del caso. En ese caso, se estimó que el hecho esencial era que la alegada noticia difamatoria que se publicó, prácticamente, era una copia del texto de unas denuncias policiacas. Id.
Se indicó que establecida la veracidad de ese hecho, resultaba impertinente desde el punto de vista de la responsabilidad del periódico demandado, si la policía al ofrecer la información alegadamente difamatoria actuó con negligencia; si fue una u otra persona quien suministró la información al periódico; si hubo corroboración sobre los hechos que originaron la noticia; o si lo publicado era falso. Id. Se dispuso que habiéndose demostrado que la noticia publicada estaba basada en su totalidad en hechos expuestos en una denuncia (documento público y oficial) debía concluirse que bajo ningún conjunto de hechos que hubiera presentado la parte demandante se hubiera podido establecer que el periódico fue, en ese caso, negligente en la publicación de *1069 la noticia. Id.
En fin, se estableció que incurrió en error el tribunal de primera instancia al haberse negado a dictar sentencia sumaria a favor de la parte demandada debido a que la demandante no podía demostrar que contaba con evidencia para probar tan siquiera que el demandado había sido negligente al publicar la noticia alegadamente difamatoria. Id., pág. 646. Valga añadir que aunque este fundamento era suficiente para dictar la sentencia sumaria, también pudo favorecerse tal resultado bajo la doctrina del privilegio del reportaje justo y verdadero. Id.
Recientemente, en Colón Pérez v. Televicentro de Puerto Rico, res. el 6 de marzo de 2009, 2009 JTS 46, se indció que en los casos por difamación se han reconocido dos formas distintas para establecer que procede en derecho dictar sentencia sumariamente. Discutimos la primera:
Se puede demostrar que no existe controversia real sustancial en cuanto a ningún hecho material y que, como cuestión de derecho, los sucesos alegados no son suficientes para establecer causa de acción alguna, ya sea porque se incumplen los requisitos necesarios o se configura una defensa afirmativa. La evidencia a utilizarse consiste en las declaraciones juradas y prueba documental admisible que el promovente someta con su moción o que obre en autos.
Una vez el promovente justifique la desestimación sumaria, el demandante debe controvertir los hechos pertinentes con declaraciones juradas o prueba documental admisible. Como la sentencia sumaria es parte de la protección constitucional de los medios de comunicación en los casos de libelo, el tribunal, en vez de examinar la evidencia que se le presente de la forma más favorable a la parte demandante promovida, exigirá a ésta mayor rigor en su oposición para que pueda derrotar la moción de sentencia sumaria de la prensa. Id.
La segunda manera en que el promovente puede cumplir su carga inicial es alegando y demostrando que el demandante no tiene evidencia suficiente para establecer los requisitos de su reclamación, es decir, que carece de prueba para demostrar algún elemento esencial de la causa de acción. Id. Además, tiene que persuadir al tribunal de que no es necesario celebrar una vista evidenciarla y que, como cuestión de derecho, procede que se desestime la reclamación. Además, se explicó en nota al calce que en esta modalidad de sentencia sumaria la parte promovente debe demostrar, luego de transcurrido un tiempo adecuado y razonable para el descubrimiento de prueba, que de los documentos que acompañan su solicitud o del récord del tribunal surge que la parte promovida no cuenta con evidencia suficiente para probar un elemento esencial de su caso, sobre el cual tiene el peso de la prueba. Id.
Por su parte, el promovido está obligado a producir prueba específica que, de ser admitida y creída, demuestre todos los elementos de la causa de acción. Para que la sentencia no sea dictada en su contra, el promovido también podría demostrar la ausencia de un descubrimiento de prueba adecuado. Id.
D
En el ámbito de las acciones por difamación se ha elaborado la doctrina conocida como of and concerning the plaintiff, la cual requiere que en toda acción por difamación, el demandante pruebe que las expresiones difamatorias se refieran a su persona de modo particular. El requisito de referencia específica o declaración “sobre el demandante y relativa al mismo” limita el derecho a demandar por falsedad injuriosa, ya que concede dicho derecho a aquellos que son objeto directo de críticas, y se lo niega a aquellos que meramente se quejan por manifestaciones no específicas que estiman los perjudican. Soc. de Gananciales v. El Vocero de P.R., 135 D.P.R. 122, 128-129(1994).
Para prevalecer en una acción por difamación, el demandante no sólo debe probar que cierta información publicada era de contenido difamatorio, sino que debe poder hacer la identificación de sí mismo como la *1070 persona difamada. Ningún escrito puede considerarse libeloso a menos que se refleje sobre una persona en particular. Siendo una acción destinada a vindicar la reputación personal del injuriado, la acción por difamación requiere que la identidad de éste surja diáfanamente de la publicación en cuestión. Id., pág. 129.
La doctrina de ” of and concerning the plaintiff’ goza de rango constitucional en cuanto a impedir que un ataque o cuestionamiento impersonal a la gestión gubernamental o sobre un asunto de interés público pueda dar base a una acción de libelo por parte de los funcionarios o figuras públicamente responsables por dicha gestión, pudiendo así desalentar o penalizar el ejercicio de la discusión y fiscalización pública sobre estos asuntos. Id., páginas 130-131.
El requisito de referencia específica sirve para inmunizar un tipo de declaraciones que no deben desalentarse por ser importantes para mantener el vigor y la apertura del discurso público en una sociedad libre. Al igual que las declaraciones que expresan una opinión, las declaraciones que carecen de una referencia específica gozan de inmunidad bajo el manto de la Primera Enmienda en cuanto éstas sirven el interés fundamental de fomentar y garantizar el debate público y la crítica abierta, libre y robusta sobre la gestión gubernamental y otros asuntos de interés público. Id., pág. 131.
Las garantías contenidas en la Primera Enmienda de la Constitución federal a favor de la libertad de expresión y de prensa prohíben que cualquier estado conceda un remedio o reconozca una causa de acción por libelo a un ciudadano por declaraciones impersonales hechas sobre asuntos de importancia pública, en ausencia de una referencia difamatoria a su persona en su carácter personal. Satisfecho este requisito de referencia específica corresponderá al demandante probar su causa de acción por libelo conforme a las normas de responsabilidad aplicables. Id., páginas 131-132.
En resumen, no procede una reclamación de daños contra la prensa por informaciones que reflejen un ataque impersonal contra la gestión de gobierno o cualquier otra de trascendencia pública, por parte de aquellos encargados de dicha gestión, en ausencia de una referencia específica e individualizada sobre alguna persona y conforme a las normas constitucionales de responsabilidad aplicables. Id., pág. 133.
E
En Villanueva v. Hernández Class, supra, pág. 647, se trajo a colación que la sección 4 de la Ley de Libelo y Calumnia, 32 L.P.R.A. 3144, dispone que no se tendrá por maliciosa la publicación que se hace en un procedimiento legislativo, judicial, u otro procedimiento autorizado por ley. La disposición añade que no se presumirá que es maliciosa la publicación que se hace, entre otras instancias, en el desempeño de nn cargo oficial; en un informe justo y verdadero de un procedimiento judicial, legislativo u oficial, o de algo dicho en el curso de dichos procedimientos. Id.
Tomando en cuenta ello, se indicó que son dos los requisitos necesarios para que pueda tenerse por configurado el privilegio del reportaje justo y verdadero. En primer lugar, el reportaje tiene que ser justo en relación con el proceso que es objeto de información. Id. También, se considera justo si captura la sustancia de lo acontecido y si toma en consideración el probable efecto que tendrá en la mente de un lector y oyente promedio.
El segundo elemento del privilegio consiste en que lo publicado tiene que ser cierto. Se tiene por cierto el reportaje si, aun cuando la información que se brinda en el procedimiento judicial, legislativo u oficial sea inherentemente falsa o libelosa, el reportaje o noticia publicada sea cierta por cuanto refleja la verdad de lo expresado o acontecido en el procedimiento llevado a cabo. Id. Para cumplir con el elemento de la veracidad de lo relatado no es necesario que lo publicado sea exactamente correcto, sino que bastará con que se publique un extracto sustancialmente correcto de lo ocurrido. Id.
*1071 En el citado caso se continuó aclarando que el privilegio del reportaje justo y verdadero protege inclusive a quien publica una información falsa o difamatoria, siempre que la misma recoja o refleje verazmente lo acontecido en los procedimientos, informes o acciones públicas u oficiales de agencias gubernamentales. El fundamento para lo anterior es que resulta preferible que las causas se ventilen ante los ojos públicos, no porque las controversias que existan entre un ciudadano y otro sean de interés público, sino porque es de suma importancia que aquellos que administran la justicia estén siempre conscientes de su responsabilidad hacia el público, y además, que todo ciudadano se convenza de la forma en que se da cumplimiento a un deber público. Dicho de otro modo, lo que se persigue es que el reportero actúe como sustituto del público en la observación del evento. Id., pág. 648.
Por otro lado, se reconoció también que se puede perder el privilegio en caso de que se escriba una parte parcializada y subjetiva de la historia. Lo mismo ocurre si el demandante logra probar que el demandado publicó la información actuando maliciosamente, con ánimo prevenido, con el propósito de causar daño o conociendo la falsedad de la información. Id., páginas 648-649.
Basándonos en lo anterior, llegamos a la siguiente conclusión.
ni
En este caso, no se cometieron los errores señalados. Previo a la resolución del caso por vía sumaria, las partes utilizaron varios mecanismos de descubrimiento de prueba, a saber, requerimientos de admisión y de documentos, e interrogatorios. También, las partes produjeron prueba documental, entre ellas, declaraciones juradas y transcripciones. El TPI analizó dicha prueba junto con las alegaciones de las partes y aseguró mediante un dictamen que la prueba presentada al momento sostenía la resolución sumaria del caso. Avalamos ese dictamen. La prueba que obra en el expediente fue suficiente para que se tuviera por satisfecha, al menos, una de las modalidades de sentencia sumaria según se aplica este mecanismo a casos de difamación.
En casos de difamación, ya sea por libelo (expresión o publicación escrita) o por calumnia (expresión verbal), el mecanismo de sentencia sumaria no se examina de manera favorable al demandante. Estimamos que en este caso, Noti Uno cumplió con los requisitos que impone la jurisprudencia para que se declarara a su favor la sentencia sumaria tal cual lo solicitó. Cumplió con demostrar, con la prueba documental que obraba en autos, que no había controversia sustancial de hechos materiales; que se configuraron diversas defensas afirmativas a su favor; y que los apelantes no cumplían con varios requisitos de la causa de acción que presentaron.
Primero, estamos de acuerdo conque se consideraran a los apelantes como funcionarios públicos para efectos del derecho relacionado a una causa de acción por difamación. En este caso, la prueba documental apuntó a que las imputaciones alegadamente difamatorias que difundió Noti Uno, estaban ligadas a la conducta o desempeño de los apelantes como agentes de la policía. Como bien se ha explicado, en instancias como esta, la tendencia ha sido la de extender a los agentes policiacos, tanto los de street level como high ranking officers, la doctrina de malicia real. En este caso, dicho sea de paso, se trata incluso de agentes de la policía pertenecientes a una unidad especializada.
En un supuesto como el de autos, se ha favorecido el derecho a expresión mediante el libre flujo de información sobre el proceder de funcionarios gubernamentales como los involucrados en este caso. El TPI así lo determinó y coincidimos con tal resultado.
Tratándose de funcionarios públicos, y habiéndose interpuesto una petición de sentencia sumaria, los apelantes debían demostrar mediante prueba robusta y convincente que Noti Uno difundió la noticia con malicia real. Esto presuponía que se acreditara que Noti Uno sabía que la información era falsa al momento de difundirla, o al menos, que la difundió con grave menosprecio de si era falsa o no. En este caso, al examinar la prueba documental, advertimos que los apelantes descansaron solamente en sus alegaciones para intentar dar *1072 por probado que medió malicia real. No detallaron prueba que apuntara a ese conocimiento de la falsedad de la información difundida.
Por otra parte, Noti Uno logró demostrar que la información sobre la ocupación de armas y droga a los agentes de la DOE de Humacao provino de una fuente oficial, a saber, de las declaraciones del entonces Superintendente de la policía, Ledo. Pedro Toledo. Examinamos la transcripción de la entrevista que se le realizó temprano en la mañana del 29 de agosto de 2007 al Ledo. Pedro Toledo y éste explicó que la intervención se suscitó a instancia suya; que el traslado del supervisor de los apelantes fue ordenado por él; y aunque aseguró que posteriormente recibiría un informe detallado sobre la situación, adujo que se le había informado que se ocupó “armas” y “alguna droga” a los agentes de DOE de Humacao.
De esta manera, los pormenores del titular que adelantó Noti Uno, fueron ofrecidos por el más alto funcionario del cuerpo policiaco. La confiabilidad y oficialidad de esa información no quedó en entredicho. No vemos cómo de este hecho hubiera podido establecerse que Noti Uno hubiera sido siquiera negligente en comentar la información que brindó el Superintendente de la Policía sobre los hallazgos de un operativo que éste autorizó, y sobre los que luego, comentó voluntariamente a los medios noticiosos.
Si la información que se brindó mediante entrevista y por voz del Ledo. Pedro Toledo era falsa; si este último ofreció tal información sin corroborar o haber tenido en detalle lo que sucedió; y si posteriormente, el Ledo. Pedro Toledo rectificó sus expresiones, no puede abstraerse del hecho de que lo que informó Noti Uno fue una relación de la sustancia de lo que aconteció según lo relató el Superintendente de la Policía. La información que difúndió Noti Uno fue, cuando menos, un extracto sustancialmente correcto de lo ocurrido, lo cual le hace acreedor del privilegio del reportaje justo y verdadero.
Agréguese que los apelantes no lograron demostrar que de las expresiones alegadamente difamatorias que imputó a Noti Uno, surgiera diáfanamente una referencia específica a cada uno de los apelantes. De un examen del expediente del caso, no logramos constatar que los apelantes acreditaran que Noti Uno realizó expresiones e hizo referencia a cada unos de los apelantes, y ello, en su carácter personal. En ausencia de este tipo de referencia de modo particularizada, precisa concluir que los apelantes incumplieron con probar la concurrencia del requisito de referencia específica. Los apelantes se limitaron a indicar que Noti Uno se refirió a los miembros de la división a la que pertenecen los apelantes, de lo cual estimaron podía inferirse la identidad de ellos. Su apreciación es incorrecta y no cumple con el requisito de referencia específica que es parte de la causa de acción por difamación.
En resumen, frente a la moción de sentencia sumaria que presentó Noti Uno, quedó claro que le asistía defensas que hacen improcedente el reclamo presentado en su contra (reportaje justo y verdadero), y además, que los apelantes fallaron en demostrar la concurrencia de elementos y requisitos de la causa de acción que interpusieron (malicia real y requisito de referencia específica). Más aún, quedó incontrovertido el hecho de que la información difundida por Noti Uno, aun cuando pudiera reputarse falsa a fin de cuentas, se limitó a capturar y reseñar la sustancia de lo acontecido. Lo anterior, basándose en la información oficial y confiable que brindó el Superintendente de la Policía. Actuó correctamente el TPI al desestimar la demanda que presentaron los apelantes por difamación, en la modalidad de calumnia, en caso del codemandado Noti Uno.
IV
En mérito de lo anterior, confirmamos el dictamen apelado.
Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.
Leda. Dimarie Alicea Lozada
Secretaria del Tribunal de Apelaciones
*1073 ESCOLIOS 2010 DTA 52

. Yariliz Matos González, Doris Burgos García, Catalino Velásquez Guzmán, Jane Burgos Martínez, Melvin Marcano Nieves, George Steidel Navarro, Edgar Soto Santiago, Luis O. Roldán Rosado, Luis G. Meléndez García, Luis A. Burgos Meléndez y Ángel Adrovet Burgos.

. Apéndice de la apelación, pág. 37; Contestación a Demanda Enmendada de Ledo. Pedro Toledo, párrafo 17.

. Apéndice de la apelación, páginas 174-175.

. Apéndice de la apelación, páginas 176-178.

. Apéndice de la apelación, páginas 178-179.

. Apéndice de la apelación, páginas 4 y 37.

. Apéndice de la apelación, pág. 290.