EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Yesenia Torres Figueroa<br><br>Recurrida<br><br>v.<br><br>Fernando Vélez Rivera y otros<br><br>Peticionarios<br><br>―――――――――――――――――――<br><br>Yesenia Torres Figueroa<br><br>Recurrida<br><br>v.<br><br>Fernando Vélez Rivera y otros<br><br>Peticionarios | Certiorari<br><br>2022 TSPR 127<br><br>210 DPR ____ |

Número del Caso:  CC-2017-505
                 cons. con
                 CC-2017-507


Fecha: 25 de octubre de 2022


Tribunal de Apelaciones:

    Región Judicial Bayamón-Aibonito, Panel VI


Abogados de la parte peticionaria:

    Lcdo. Manuel A. Pietrantoni
    Lcda. Karena Montes Berríos
    Lcdo. Roberto Sueiro del Valle
    Lcda. Krizia M. Ferrer Flores


Abogados de la parte recurrida:

    Lcdo. Alexander Vélez Cid
    Lcda. Ana González Cabrera


Materia: Sentencia con Opinión de Conformidad y Opinión Disidente.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Yesenia Torres Figueroa<br><br>    Recurrida<br><br>        v.<br><br>Fernando Vélez Rivera y otros<br><br>    Peticionarios | |
| Yesenia Torres Figueroa<br><br>    Recurrida<br><br>        v.<br><br>Fernando Vélez Rivera y otros<br><br>    Peticionarios | CC-2017-0505<br>cons. con<br>CC-2017-0507 |

SENTENCIA

En San Juan, Puerto Rico, a 25 de octubre de 2022.

Atendido el recurso de *certiorari* presentado por la parte peticionaria, así como los alegatos de las partes, se confirma la Sentencia del Tribunal de Apelaciones y se devuelve el caso al Tribunal de Primera Instancia para que continúe con los procedimientos.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez emite una Opinión de Conformidad a la cual se unen el Juez Asociado señor Estrella Martínez y el Juez Asociado señor Colón Pérez. El Juez Asociado señor Colón Pérez emite las siguientes expresiones de conformidad:

> "Estamos conforme con la *Sentencia* que hoy emite esta Curia, -- en la cual se confirma la determinación del Tribunal de Apelaciones --, ello por entender que los aquí peticionarios, -- el señor Antonio Sánchez Casiano y otros --, a pesar de tener la oportunidad para así hacerlo, no presentaron ante el Tribunal de Primera

Instancia aquella prueba necesaria para lograr establecer que, -- **en el momento en que ocurrieron los hechos que dieron margen al presente litigio** --, la Sra. Yesenia Torres Figueroa podía considerarse una figura pública. Los peticionarios no podían descansar, sin más, -- como lo hicieron --, en brindar una serie de detalles sobre la profesión que la señora Torres Figueroa ejercía, entiéndase periodista, para probar tal alegación. Véase, *Gertz v. Robert Welch, Inc.,* 418 US 323 (1974).

Huelga señalar que nuestro proceder en este caso, y la conclusión a la que llegamos en el mismo, en esencia, descansa en dos factores: 1) en el momento en que ocurrieron los hechos que dieron margen al presente litigio, entiéndase el 3 y 4 de septiembre de 2013, y 2) en la prueba que tuvo ante sí el foro primario. Y es que, se pudiese argumentar, con algo de razón, que con el paso del tiempo, -- hasta el presente --, la periodista Yesenia Torres Figueroa se ha convertido en una figura pública. Mas, sin embargo, esa no es la controversia que estamos llamados a atender en el caso de marras."

El Juez Asociado Martínez Torres emite una Opinión disidente a la cual se unen la Jueza Asociada señora Pabón Charneco y el Juez Asociado señor Feliberti Cintrón.

                              Javier O. Sepúlveda Rodríguez
                              Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Yesenia Torres Figueroa<br><br>Recurrida<br><br>v.<br><br>Fernando Vélez Rivera y otros<br><br>Peticionarios | |
| Yesenia Torres Figueroa<br><br>Recurrida<br><br>v.<br><br>Fernando Vélez Rivera y otros<br><br>Peticionarios | CC-2017-0505<br>cons. con<br>CC-2017-0507 |

La Jueza Presidenta Oronoz Rodríguez emitió una Opinión de conformidad a la cual se unió el Juez Asociado señor Estrella Martínez y el Juez Asociado señor Colón Pérez

En San Juan, Puerto Rico, a 25 de octubre de 2022.

Este caso proveía la oportunidad de delimitar los contornos de la figura pública en acciones por difamación. Lo anterior para determinar si una reportera de un noticiario de televisión debe ser considerada una figura pública meramente por razón de su ocupación, y por lo tanto, debe probar su causa de acción por difamación bajo el estándar de malicia real. Estoy conforme con la sentencia que se emite hoy porque la prueba que consta en el expediente no es suficiente para probar que, conforme a

nuestro ordenamiento, la Sra. Yesenia Torres Figueroa era una figura pública al momento en que se emitieron las expresiones.

I

Los hechos que originan la controversia ante nosotros se remontan a unos programas radiales que se transmitieron entre el 3 y 4 de septiembre de 2013 en la emisora de radio "La Mega 106.9 FM", en el programa conocido como "El Circo". Al momento de los hechos, este era un programa dedicado al entretenimiento matutino, que se transmitía de 5:30 a.m. a 10:00 a.m., dividido en varios segmentos y moderado por varios locutores entre los cuales se encontraban los codemandados, el Sr. Antonio Sánchez, conocido como "El Gangster" (señor Sánchez), y el Sr. Fernando Vélez Rivera, también conocido como "El Nalgorazzi" (señor Vélez Rivera).

Como parte de su programación regular, para las fechas en que ocurrieron los hechos alegados, "El Circo" contaba con dos segmentos dedicados a la difusión de chismes, comentarios jocosos e hilaridades. El primero se realizaba a través de un personaje ficticio conocido como "El Güimo Investigador", interpretado por el señor Sánchez. Por su parte, el señor Vélez Rivera conducía el segundo segmento. En las fechas en las que se transmitieron los programas en controversia, se encontraba, simultáneamente, los señores Sánchez y Vélez Rivera, así como el Sr. José Vallenilla y

la Sra. Pamela Noa, locutores panelistas regulares del programa.

En lo pertinente a las controversias ante nosotros, el 14 de enero de 2014 la Sra. Yesenia Torres Figueroa (señora Torres Figueroa o recurrida) presentó ante el Tribunal de Primera Instancia una demanda de daños y perjuicios —y subsiguientemente, una Demanda Enmendada el 16 de enero de 2014— contra el señor Vélez Rivera, su esposa de nombre desconocido y la Sociedad Legal de Gananciales compuesta por ambos; el señor Sánchez, su esposa, de nombre desconocido y la Sociedad Legal de Gananciales compuesta por ambos; SBS, Spanish Broadcasting System Holding Company, Inc. (SBSHC), así como otros codemandados de nombres desconocidos.

En su demanda, la señora Torres Figueroa alegó que el 3 de septiembre de 2013, durante la transmisión del programa "El Circo", el señor Sánchez trajo a discusión el caso de una "persona que hace trabajos de reportera" que estaba en trámites de divorciarse de su entonces esposo.[1] Alegó que el señor Sánchez difundió que la reportera —hasta ese momento, no identificada— salía con una persona que no era su esposo. La señora Torres Figueroa añadió que, inmediato al comentario anterior, el señor Vélez Rivera añadió que la reportera estaba embarazada y que se rumoraba que el hijo que esperaba no era de su entonces esposo. Según consta de la Demanda Enmendada, hasta ese momento, el

---

[1] Demanda enmendada, Apéndice, pág. 14.

señor Vélez Rivera se había limitado a identificar a la persona como "[u]na reportera bien conocida y […] una mamizonga".[2]

La señora Torres Figueroa alegó que, durante la programación del día siguiente, los señores Sánchez y Vélez Rivera retomaron el tema. Indicó que estos difundieron la noticia de que el hijo que esperaba no era fruto de su matrimonio, sino de una relación extramarital con un tercero. Añadió que allí también se comentó que esta se encontraba en un proceso de divorcio ante el tribunal con su entonces esposo. Fue en ese momento que el señor Vélez Rivera la identificó por su nombre y apellidos, así como expresó que laboraba como reportera del noticiario televisivo *Noticentro*. La recurrida manifestó, además, que, en esa misma fecha, a las 7:48 a.m., el señor Vélez Rivera publicó un mensaje en su perfil público en la red social "Twitter", en el que expuso lo siguiente: "Dicen que la reportera que se divorcia @YeseniaTorresFi[sic] está embarazada (tiene otra hija). Las malas lenguas dicen que no es d[sic] su esposo… dicennnn[sic]".[3]

La recurrida indicó que, al momento de los hechos, estaba casada con el Sr. Saúl Negrón Barreto, con quien procreó una hija y estaba embarazada con su hijo. Añadió que tenía dos hijos de una relación previa y que, en ese entonces, laboraba como reportera en un noticiario de la

---

[2] Íd., pág. 15.
[3] *Demanda enmendada*, Apéndice, pág. 18.

cadena televisiva WAPA Televisión. Arguyó que las expresiones vertidas en la programación constituían una intromisión a su vida privada, así como un acto falso, ofensivo y calumnioso contra su dignidad y su derecho constitucional a la intimidad. Alegó, además, que, al imputársele falsamente una conducta adulterina, se lesionó su honra y reputación personal y profesional. Según invocó, las actuaciones de los codemandados le causaron angustias mentales profundas, daños morales y emocionales, así como daño físico, al punto de causarle un embarazo de alto riesgo. Adicionalmente, planteó que los señores Sánchez y Vélez Rivera eran empleados o agentes de la emisora radial La Mega 106.9 FM, SBS y SBSHC, y actuaron de forma personal o a través de su empresa productora, para beneficio de estos y por sus instrucciones, por lo que los actos constitutivos de libelo y difamación le eran imputables de manera solidaria. Solicitó que se le concediera la suma de $1,000,000.00 por los daños, así como los intereses legales, costas y honorarios de abogado.

El 17 de marzo de 2014 el señor Sánchez, el señor Vélez y SBS presentaron por separado sus respectivas contestaciones a la demanda. El señor Sánchez admitió que, para las fechas en cuestión, participaba junto al señor Vélez Rivera en el programa "El Circo", y que allí interpretaba un personaje ficticio conocido como "El Güimo Investigador". No obstante, negó el resto de las alegaciones. Entre sus defensas afirmativas, planteó que

las transmisiones en cuestión estaban protegidas por la Primera Enmienda de la Constitución federal, así por la Sección 4, Art. II, de la Constitución de Puerto Rico. En lo pertinente, añadió que las expresiones se basaron, en parte, en lo dicho por fuentes confiables, por lo que no medió negligencia. Adujo, además, que la información que difundieron es un recuento veraz, y que los daños son inexistentes, especulativos o exagerados. Por último, alegó que la señora Torres Figueroa era una figura pública por lo que esta venía obligada a probar que lo publicado se hizo con malicia real.[4]

Asimismo, el señor Vélez Rivera levantó en su contestación a la demanda, esencialmente, las mismas defensas que expuso el señor Sánchez. Por su parte, SBS negó la mayoría de las alegaciones, levantó las mismas defensas que los codemandados anteriores y enfatizó que no es propietario ni administrador de la cuenta de "Twitter" del señor Vélez Rivera.

Así las cosas, el 5 de mayo de 2014, el señor Sánchez presentó una moción de sentencia sumaria. En lo pertinente, solicitó que se desestimara con perjuicio la demanda en cuanto a este, Fulana de Tal y la Sociedad Legal de Gananciales compuesta por estos. Indicó que quien produjo el programa donde se difundieron las declaraciones no fue él, sino T.S. Entertainment Group, una corporación *bona fide*, que estaba en *good standing* con el Departamento de

---

[4] *Contestación a la demanda*, Apéndice, pág. 37.

Estado. Razonó que procedía liberarlo de responsabilidad personal por cualquier reclamación existente contra T.S. Entertainment Group.

Mientras estaba ante la consideración del tribunal la moción de sentencia sumaria que presentó el señor Sánchez, la señora Torres Figueroa enmendó su demanda nuevamente para incluir como codemandados a: T.S. Entertainment Group; el señor José Vallenilla, su esposa Mengana de Tal y la Sociedad Legal de Gananciales compuesta por ambos y la señora Noa. Allí alegó, además, que el programa radial "El Circo" también se difundía a través de una estación televisiva conocida como Mega TV, dirigida al mercado sur de Florida, EE. UU.[5] Por lo demás, reiteró las alegaciones que presentó en su demanda original.

Por su parte, T.S. Entertainment Group presentó oportunamente su contestación a la demanda. Allí admitió ser una corporación que produce programas radiales y televisivos, entre los cuales está el programa "El Circo". Adujo que este último se transmite en algunas partes fuera de Puerto Rico, aunque negó el resto de las alegaciones. Indicó afirmativamente que la señora Figueroa Torres es una figura pública.

El 3 de marzo de 2016 el Tribunal de Primera Instancia ordenó a todas las partes que presentaran un memorando sobre si la demandante era figura pública o no. Esto se

---

[5] *Demanda enmendada*, Apéndice, pág. 47.

realizaría con el descubrimiento de prueba que se había llevado a cabo hasta ese momento.[6]

El 16 de mayo de 2016 el Tribunal de Primera Instancia emitió una Resolución en la que determinó que la señora Torres Figueroa era una figura pública. Según el foro primario, la prueba documental que constaba en el expediente evidenciaba una trayectoria marcada como periodista para los medios de la radio y la televisión. Según el Tribunal, la recurrida había laborado para medios internacionales, así como en los principales canales de televisión y radio del país. Resaltó que, al momento de emitir su Resolución, era mujer ancla para *Noticentro*, noticiario de WAPA TV, en la edición de los fines de semana. Indicó, además, que esta había moderado programas de radio y televisión sobre debates de asuntos de interés público, así como reportado sobre temas políticos y de entretenimiento. Razonó que, debido a su profesión como reportera de televisión, la señora Torres Figueroa tiene un público que la sigue y que se interesa en los aspectos que suceden en su vida privada. Agregó que la recurrida también se convirtió en una figura pública involuntaria al habérsele acusado en un proceso criminal arrollar a un ciclista en hechos que ocurrieron el 25 de enero de 2014.

---

[6] De la *Moción en cumplimiento de orden* que presentó el señor Sánchez se desprende que el 10 de marzo de 2015 el Tribunal de Primera Instancia ordenó a todas las partes a que presentaran un memorando de derecho en apoyo a su posición sobre si la señora Torres Figueroa era una figura pública o no tan pronto culminara el proceso de descubrimiento de prueba. No obstante, dado que el descubrimiento no había concluido, el 3 de marzo de 2016 el foro primario solicitó los memorandos con el descubrimiento llevado a cabo hasta ese momento.

Asimismo, indicó que esta se ha identificado en reportajes periodísticos como una figura pública.

Ante el cuadro anterior, el foro primario resolvió que se cumplían todos los criterios establecidos por la jurisprudencia para ser una figura pública, pues, "debido a su profesión tiene especial prominencia en los asuntos de la sociedad", tiene la capacidad de ejercer influencia y persuasión en la discusión de asuntos de interés público y participa activa en la discusión de controversias específicas, con el objetivo de inclinar la balanza en la resolución de las cuestiones envueltas.[7] Acentuó que la recurrida, "por su profesión, tiene un acceso particular a los medios y está expuesta al escrutinio público". Tras hacer referencia a lo resuelto por este foro en Oliveras v. Paniagua, 115 DPR 257 (1984), el foro primario concluyó:

> El tribunal entiende que ante toda la prueba presentada sobre la trayectoria de la Sra. Torres **y la doctrina jurídica establecid[a] por el Tribunal Supremo, en cuanto al carácter de figura pública de un periodista,** el reclamo de la Sra. Torres de que era una figura privada es uno totalmente inmeritorio y con visos de frivolidad.[8]

Debido a lo anterior, el foro primario estableció que aplicaba el estándar de malicia real para probar que las expresiones difamatorias que se alegan se realizaron en las transmisiones de 3 y 4 de septiembre de 2013, fueron hechas con conocimiento de su falsedad o con grave menosprecio de la verdad. En consecuencia, ordenó la continuación de los

---

[7] *Resolución*, Apéndice, pág. 1161.
[8] Íd., (Énfasis suplido).

procesos bajo ese estándar. En desacuerdo con la determinación, la señora Torres Figueroa presentó una moción de reconsideración, la cual fue denegada.

En esa misma fecha, el Tribunal de Primera Instancia emitió una segunda Resolución en la cual denegó la moción de sentencia sumaria que presentó el señor Sánchez, por entender que existían hechos materiales en controversia que impedían la desestimación de la demanda contra este y debían dilucidarse en un juicio en su fondo. Nótese que el foro primario expuso también allí, como un hecho incontrovertido, que la señora Torres Figueroa era una figura pública, aun cuando esta sostuvo en todo momento que no lo era.[9]

Inconforme, la señora Torres Figueroa acudió al Tribunal de Apelaciones a través de un recurso de *certiorari*.[10] Allí adujo que el Tribunal de Primera Instancia erró al concluir que es una figura pública, toda vez que la escasa prueba documental no sustentaba las determinaciones de hecho. En síntesis, la recurrida afirmó que ni su trayectoria como periodista ni su trabajo como mujer ancla para un noticiero en la edición de fin de semana eran indicativos suficientes para confirmar su estatus como figura pública. Añadió que tampoco debía

---

[9] *Resolución*, Apéndice del expediente del Tribunal de Apelaciones, KLCE201601374, pág. 126.
[10] De igual forma, el 21 de julio de 2016, el señor Sánchez presentó un recurso de *certiorari* ante Tribunal de Apelaciones. Allí solicitó que se revocara la primera Resolución que dictó el Tribunal de Primera Instancia y se ordenara la desestimación de la demanda contra este en su carácter personal.

considerarse el interés que terceros pudieran tener en conocer sobre su vida privada como un factor para determinar si era figura pública.

La recurrida resaltó además que el foro primario también erró al considerar eventos posteriores a la fecha en que se hicieron las expresiones en controversia para emitir su dictamen. En particular, impugnó toda prueba presentada a los efectos de establecer la notoriedad que obtuvo la recurrida a raíz del caso criminal en su contra por hechos ocurridos en el 2014. Indicó que, ante ese cuadro, los peticionarios no estaban exentos de probar que al 3 y 4 de septiembre de 2013, fecha en que se alega se realizaron las expresiones en controversia, concurrían los requisitos esbozados por la jurisprudencia para determinar que esta era figura pública.

Luego de varios trámites que no son necesarios pormenorizar, el 23 de marzo de 2017 el Tribunal de Apelaciones expidió los recursos que presentaron por separado la señora Torres Figueroa y el señor Sánchez, los consolidó y dictó una Sentencia. En lo pertinente, concluyó que los demandados no presentaron prueba suficiente ante el Tribunal de Primera Instancia para establecer que la señora Torres Figueroa era una figura pública. Rechazó que la jurisprudencia federal y estatal sostuvieran que una reportera, únicamente por la profesión que ejerce, esté situada en la dimensión de figuras públicas en nuestro país. Determinó que los demandados debían probar que, para

la fecha en que se emitieron las expresiones en controversia, la señora Torres Figueroa ostentaba notoriedad suficiente para ser catalogada como figura pública. Puntualizó que, si bien la señora Torres Figueroa podía ser reconocida en diversos sectores de la sociedad, para la fecha de los hechos, esta no ejercía el tipo de periodismo interpretativo que le permitiera contar con un canal para expresar sus opiniones y visiones propias y personales a la palestra pública. Añadió que, contrario a lo determinado en Oliveras v. Paniagua Diez, supra, la prueba solo demostraba que la recurrida realizaba periodismo informativo y no el tipo de periodismo que le permitiera exponer sus propias opiniones y críticas, con el potencial de influenciar a un amplio sector poblacional, como lo exige la jurisprudencia. Asimismo, reiteró que los acontecimientos relacionados con el procedimiento penal que se instó contra esta en el 2014 —y otro accidente en el que se vio involucrada en el 2015— ocurrieron posterior a las declaraciones en controversia, por lo que la evidencia que se presentó para establecer su notoriedad basado en esos hechos no debía tomarse en cuenta para determinar si era figura pública.

A raíz de lo anterior, el foro apelativo intermedio revocó la Resolución que dictó el foro primario en la que concluyó que la recurrida era una figura pública y determinó que la parte demandada no pudo probar su estatus

como tal al momento en que ocurrieron los hechos en el 2013.[11]

Inconformes, el señor Sánchez, su esposa, la Sociedad Legal de Gananciales compuesta por ambos y T.S. Entertainment Group, Corp., presentaron oportunamente un recurso de *certiorari* ante este Tribunal. Indicaron que el Tribunal de Apelaciones erró al determinar que la prueba que se presentó ante el foro primario no sustentaba que, al momento en el cual se hicieron las expresiones en controversia, esta era una figura pública.

Por su parte, SBS presentó también un recurso de *certiorari*. Solicitó que revocáramos la Sentencia del Tribunal de Apelaciones y determináramos que la señora Torres Figueroa es una figura pública. En la alternativa, solicitó que determináramos que existe controversia de hechos materiales que impiden determinar si, al momento de los hechos, la recurrida era una figura pública o privada. Ello con el propósito de que se devolviera al foro primario para que se dilucide el asunto con la presentación de la prueba pertinente. Esto se ampara en su segundo señalamiento de error en el que arguyó que el foro apelativo intermedio tomó en consideración alegaciones

---

[11] Por otro lado, el Tribunal de Apelaciones confirmó en su Sentencia la Resolución que emitió foro primario en la cual denegó dictar sentencia sumaria a favor del señor Sánchez. No obstante, el foro apelativo intermedio modificó esa Resolución únicamente a los efectos de establecer que, al momento de los hechos alegados en la demanda, la señora Torres Figueroa era una figura privada y no pública, como el Tribunal de Primera Instancia había expuesto en sus determinaciones de hechos.

fácticas que hizo la peticionaria, sin que presentara prueba para apoyarlas.

El 1 de diciembre de 2017 expedimos ambos recursos, ordenamos su consolidación y solicitamos a las partes sus respectivos alegatos. En sus alegatos, los peticionarios reiteraron los planteamientos que presentaron en sus recursos de *certiorari*.

Por su parte, la señora Torres Figueroa adujo en su alegato que este Tribunal no debe intervenir con la Sentencia que dictó el Tribunal de Apelaciones. Indicó que la jurisprudencia ha destacado que los elementos siguientes deben concurrir para catalogar a una persona como figura pública: (1) si tiene especial prominencia en los asuntos de la sociedad; (2) la capacidad que tiene para ejercer influencia y persuasión en la discusión de asuntos de interés público, y (3) si participa activamente en la discusión de controversias públicas específicas con el propósito de inclinar la balanza en la resolución de las cuestiones envueltas. Indicó que, tal como determinó el foro apelativo intermedio, los peticionarios no probaron que la recurrida tenía especial prominencia para el 3 y 4 de septiembre de 2013. Recalcó que, al momento de los hechos, esta ejercía periodismo informativo, por lo que no se le permitía intercalar su opinión con su trabajo. Por ello, indicó que los peticionarios se equivocan cuando aducen que su trayectoria como periodista le ha permitido ejercer influencia en la discusión de asuntos públicos.

Adujo, además, que para determinar si una persona es figura pública o no en una causa de acción por difamación, no se puede tomar en cuenta evidencia de hechos posteriores a la fecha en que se emitieron las declaraciones difamatorias.

II

A.

La Constitución puertorriqueña le garantiza a cada persona el derecho a la intimidad y a la "protección de ley contra ataques abusivos a su honra, a su reputación y a su vida privada o familiar". Art. II, Sec. 8, Const. ELA, LPRA, Tomo I. Esto como corolario a la máxima constitucional que dicta que la "dignidad del ser humano es inviolable". Art. II, Sec. 1, Const. ELA, LPRA, Tomo I. Sin duda, esta garantía fundamental ocupa uno de los sitiales más altos en nuestro ordenamiento. Así se hizo al reconocerlo como un derecho de factura más ancha bajo nuestra Constitución en ELA v. Hermandad de Empleados, 104 DPR 436 (1975), al aplicarlo a figuras privadas desde Arroyo v. Rattan, 117 DPR 35 (1986) y al reconocerle eficacia ex proprio vigore en El Vocero v. ELA, 131 DPR 356 (1992).

El objeto del derecho tutelado en una acción de daños y perjuicios por difamación es la reputación y el buen nombre de la persona que ha sido injuriada públicamente. Colón Pérez v. Televicentro de PR, 175 DPR 690, 712 (2009); Soc. Gananciales v. El Vocero de PR, 135 DPR 122 (1994). Aunque nuestro ordenamiento ya reconocía una causa de

acción por difamación al amparo de la Ley de 19 de febrero de 1902, Ley de libelo y calumnia de Puerto Rico, 32 LPRA sec. 3141, et seq., se ha reiterado que la fuente primaria de la protección contra injurias es la Constitución. Colón Pérez v. Televicentro de PR, supra; Pérez v. El Vocero de PR, 149 DPR 427 (1999). Asimismo, se ha reconocido el Art. 1802 de Código Civil de 1930, 31 LPRA sec. 5141 (derogado), como el vehículo para llevar una acción en daños y perjuicios por libelo, según lo modifica la doctrina constitucional federal. Meléndez Vega v. El Vocero de PR, 189 DPR 123 (2013); Romany v. El Mundo, Inc., 89 DPR 604, 617-618 (1963). Por lo tanto, la Ley de 1902 sobrevive tan sólo en cuanto es compatible con aquella. Colón Pérez v. Televicentro de PR, supra, pág. 714.

Conforme a lo anterior, la persona que inste este tipo de reclamo deberá establecer que la parte demandada publicó una expresión falsa y difamatoria en su contra, por la que sufrió daños y que, con tal conducta, infringió el estándar legal de conducta aplicable, según sea el caso. Colón Pérez v. Televicentro de PR, supra, pág. 714. Según se ha determinado tanto en la jurisprudencia federal como en la estatal, el estándar legal aplicable dependerá de si la persona difamada al momento de los hechos era una persona pública o privada.

B.

Es harto conocido que la libertad de expresión constituye una de las libertades más apreciadas

garantizadas tanto bajo la Primera Enmienda de la Constitución federal, como la Sec. 4, Art. II, de la Constitución de Puerto Rico. Sec. 4, Art. II, Const. ELA, Tomo 1. Por ello, las "acciones de difamación plantean la necesidad de balancear el derecho a la libre expresión y la libertad de prensa, que comprende el interés del Pueblo en fomentar el debate vigoroso sobre cuestiones de interés público, y el derecho a la intimidad de los individuos". Gómez Márquez v. Periódico El Oriental, Inc., 203 DPR 783, 795 (2020); Giménez Álvarez v. Silén Maldonado, 131 DPR 91, 97-98 (1992).

Debido a lo anterior, la jurisprudencia ha demarcado los contornos constitucionales para delimitar en qué momentos el derecho a la libre expresión debe ceder ante una reclamación por difamación. De ahí que la jurisprudencia federal adoptara un estándar legal basado, en esencia, en si la persona contra quien se cometieron los actos difamatorios es una figura pública o privada. Gómez Márquez v. Periódico El Oriental, Inc., supra, pág. 795. Lo anterior ha sido delimitado por una serie de casos decididos por el Tribunal Supremo federal que han sido aplicados en nuestra jurisdicción.

En el caso normativo New York Times Co. v. Sullivan, 376 US 254 (1964), se determinó que las leyes estatales sobre la difamación, como cualquier otra "fórmula de represión de expresión" sancionada por el Estado, tenían que estar atadas a estándares que cumplan con la Primera

Enmienda. (Traducción suplida). Íd., pág. 269. Por ello se determinó que para que un funcionario público prospere en una causa de acción por difamación relacionada a su conducta oficial, este tiene que probar que la expresión difamatoria se publicó con malicia real o grave menosprecio de la verdad. Íd., pág. 279-280.

Asimismo, en Curtis Publishing Co. v. Butts, 388 US 130 (1967), el Tribunal federal razonó que el estándar que estableció en New York Times Co. v. Sullivan, supra, aplica a personas que, aunque no son funcionarios públicos, tienen la capacidad de influir en asuntos de interés para la sociedad por razón de su fama. Associated Press v. Walker, 388 US 130 (1967).

No obstante, no fue hasta Gertz v. Robert Welch, Inc., 418 US 323 (1974), que el Tribunal federal pautó los contornos de la figura pública para propósitos de las acciones por difamación. Allí el Tribunal federal distinguió entre categorías de demandantes en casos por difamación: por un lado, las figuras públicas --y sus distintas subcategorías--, y por otro, la persona privada. Sobre el particular, el Tribunal Supremo federal expuso:

> [W]e have no difficulty in distinguishing among defamation plaintiffs. The first remedy of any victim of defamation is self-help -- using available opportunities to contradict the lie or correct the error and thereby to minimize its adverse impact on reputation. Public officials and public figures usually enjoy significantly greater access to the channels of effective communication and hence have a more realistic opportunity to counteract false statements than private individuals normally enjoy. Private

individuals are therefore more vulnerable to injury, and the state interest in protecting them is correspondingly greater.

El Tribunal Supremo federal concluyó que las personas privadas son más vulnerables al daño que las figuras públicas, por lo que estas son más merecedoras de resarcimiento. Íd., pág. 345. Ante ello, dispuso que le corresponde al derecho estatal definir el estándar de responsabilidad aplicable, "siempre que se le exija al reclamante probar que el demandado actuó con algún grado de culpa". Gómez Márquez v. Periódico El Oriental, Inc., supra, pág. 796; Gertz v. Robert Welch, Inc., supra, pág. 347.

La normativa antes expuesta fue recogida en el ordenamiento puertorriqueño a través de nuestras decisiones en Torres Silva v. El Mundo, Inc., supra, Oliveras v. Paniagua Diez, supra, y González Martínez v. López, 118 DPR 190 (1987), así como reiterada en múltiples ocasiones. Gómez Márquez v. Periódico El Oriental, Inc., supra; Meléndez Vega v. El Vocero de PR, supra; Colón, Ramírez v. Televicentro de PR, supra; Garib Bazain v. Clavell, 135 DPR 475 (1994); Villanueva v. Hernández Class, 128 DPR 618, 642 (1991); García Cruz v. El Mundo, Inc., 108 DPR 174, 178 (1978).

Conforme a lo anterior, se ha determinado que, establecer malicia real en los casos de difamación de figuras o funcionarios públicos, requiere que se presente prueba de manera clara, robusta y convincente, un estándar

más riguroso que el de preponderancia de la prueba. Meléndez Vega v. El Vocero, supra, pág. 149. De esta forma, no basta con una afirmación generalizada de que el demandado obró con malicia real, sino que tiene que establecerse con hechos específicos. García Cruz v. El Mundo, Inc., supra, pág. 180.

En cambio, distinto a la figura pública, bastará para la persona privada presentar evidencia suficiente que pruebe negligencia, al amparo de la disposición aplicable para prevalecer en una acción de daños y perjuicios. Según hemos reiterado, los criterios para determinar negligencia en estos casos son los siguientes:

> (1) la naturaleza de la información publicada y la importancia del asunto sobre el cual trata, especialmente si la información es libelosa de su faz y puede preverse el riesgo de daño; (2) el origen de la información y la confiabilidad de su fuente; (3) la razonabilidad del cotejo de la veracidad de la información, lo cual se determina tomando en consideración el costo en términos de dinero, tiempo, personal, la urgencia de la publicación, el carácter de la noticia y cualquier otro factor pertinente. Colón Pérez v. Televicentro de PR, supra, pág. 707; Torres Silva v. El Mundo, Inc., supra, pág. 425.

III

Según adelanté, la controversia que planteó este caso requería que precisáramos si, al amparo de la norma esbozada en Gertz v. Robert Welch, Inc, supra, y los pronunciamientos de este Tribunal en Oliveras v. Paniagua, supra, una persona con la profesión de reportera, meramente por razón de su ocupación, debe ser considerada una figura pública para todos los aspectos de su vida privada, sujeto

al estándar riguroso de malicia real. Igualmente, la solución de esta controversia requería que determináramos si un tribunal puede tomar en cuenta eventos posteriores a la fecha en que ocurrieron las expresiones difamatorias alegadas para determinar si una persona era figura pública al momento en que nació su causa de acción. La contestación a ambas interrogantes concierne asuntos de estricto derecho los cuales estábamos facultados para atender.

### A.

Para contestar lo anterior, es necesario adentrarse en el desarrollo del concepto de "figura pública", en aquellos casos en los que el demandante no es un funcionario público. Como indiqué anteriormente, el caso normativo para ello es Gertz v. Robert Welch, Inc, supra. Allí, el demandante era un abogado que representó a una familia en un pleito civil que instó contra un policía que resultó convicto por el homicidio de un menor de edad que generó interés público. Este demandó al editor en jefe de una revista que publicó un artículo en el que le imputó ser marxista, leninista y conspirador en una organización comunista que planificó un ataque a la Policía de Chicago. Añadió que este tenía un amplio expediente criminal, lo que era falso.

En Gertz v. Robert Welch, Inc., supra, el Tribunal Supremo federal determinó que el demandante, Elmer Gertz, no era figura pública, sino privada. Para determinarlo, pautó los lineamientos para uniformar la norma en cuanto a

quién es "figura pública" para propósitos de las protecciones conferidas por la Primera Enmienda, así como el requerimiento de probar malicia real, conforme se estableció en New York Times Co. v. Sullivan, supra.

El Tribunal Supremo federal identificó dos factores a tomar en consideración al catalogar a una persona como figura pública. En primer lugar, estas se han expuesto **voluntariamente** a la controversia, por medio de sus propias participaciones. Íd., pág. 352. En segundo lugar, estas tienen **mayor acceso a los medios de comunicación, y tienen la capacidad real para hacer uso de estos en aras de contradecir el material difamatorio**. Íd., pág. 244. ("[Public figures] usually enjoy significantly greater Access to the channels of effective communications and hence have more **realistic opportunity to counteract false statements** than private individuals usually enjoy") (Énfasis suplido). El Máximo Foro federal ha sido específico en que ese acceso no puede ser creado por la misma parte responsable de los actos difamatorios para expresarse sobre ellos. Hutchinson v. Proxmire, 443 US 111, 136 (1979).

Asimismo, el Máximo Foro federal enfatizó que la designación como figura pública descansa, según expresó, **en una de dos bases alternativas**, a saber:

> In some instances an individual **may achieve such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts**. More commonly, **an individual voluntarily injects himself** or is drawn into a

particular public controversy **and thereby becomes a public figure for a limited range of issues**. In either case such persons assume special prominence in the resolution of public questions. Gertz v. Robert Welch, Inc., supra, pág. 351.

El Tribunal también elaboró sobre la distinción entre estas dos subcategorías de figura pública. Así, sobre la figura pública para todo propósito (*All Purpose Figure* o *General Public Figure*) el Tribunal Supremo federal determinó: "[f]or the most part those who attain this status have assumed roles of special prominence in the affairs of society. Some occupy positions of such persuasive power and influence that they are deemed public figures for all purposes". Íd., pág. 345. El Tribunal recalcó la norma: "**[a]bsent clear evidence of general fame or notoriety in the community, and pervasive involvement in the affairs of society, an individual should not be deemed a public personality for all aspects of his life**". (Énfasis suplido). Íd., pág. 352; David A. Elder, Defamation: A Lawyer's Guide, pág. 5-50, Thompson Legal Publ., (1993).

Por otro lado, la figura pública para propósito limitado (*Vortex Public Figure* o *Limited Purpose Public Figure*) comprende aquellos individuos que, aún ausente una presencia dominante de notoriedad general, se someten voluntariamente a la palestra pública, con la intención de influenciar la resolución de alguna controversia pública en particular. Gertz v. Robert Welch, Inc., supra, pág. 345,

351-352. D. Elder, op. cit., supra, pág. 5-59.[12] El Tribunal en Gertz v. Robert Welch, Inc., supra, determinó que, en esto casos, la persona podría convertirse en figura pública para un puñado limitado de asuntos. Íd., pág. 351. El Tribunal razonó que en estos casos: "[i]t is preferable to reduce the public figure question to a more meaningful context by looking to the nature **and extent of an individual's participation in the particular controversy giving rise to the defamation**". Íd., pág. 352. Conforme al análisis anterior, en esos casos, una persona que sea catalogada como figura pública para propósito limitado tendrá que probar malicia real por aquellos actos difamatorios que estén razonablemente relacionados con sus propios actos voluntarios en la controversia en particular.

A través de su jurisprudencia, el Máximo Foro federal ha dejado claro que la figura pública para todo propósito se limita **a un grupo minúsculo de individuos con alta notoriedad y fama**. Wolston v. Reader's Digest Ass'n, Inc.,

---

[12] Sobre el particular, el tratadista David A. Elder razona sobre el caso de Gertz v. Robert Welch, Inc., supra:

> The Court evinced therein a decided preference for the vortex or limited purpose public figure standard, i.e. whether the plaintiff was one of those who "thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved". […] Although [Gertz] had some substantial prominence in legal circles, his role in the legal proceedings "related solely to his representation of a private client." He had "not thrust himself into the vortex of this public issue, nor did he engage the public's attention in an attempt to influence his outcome". D. Elder, Defamation: A Lawyer's Guide, op. cit., pág. 5-61 (*citando a* Gertz v. Welch, supra, págs. 345, 351-352).

443 US 157, 165 (1988). Así, el tratadista David E. Elder razona:

> The Court's jurisprudence makes it clear that the all purpose or general public figure is limited to a "small group" of individuals with a high level of notoriety and fame—in other words, a "rare creature". The lower court cases indicate the criteria for such status are stringent and any doubts should be resolved in favor of limited purpose or vortex public figure status. Indeed, this unusual status [all purpose public figure] is generally limited to "celebrity" or "household word"—those "whose ideas and actions the public in fact follows with great interest," whether rightly or wrongly. […] They also generally have access to the means of response to factual error because of the proven preoccupation of the public in knowing their views, ideas and responses. (Citas omitidas). D. Elder, op. cit., págs. 5-52-53.

Asimismo, el Tribunal Supremo federal ha rechazado tajantemente toda sugerencia de que una persona pueda adquirir estatus de figura pública a raíz de la publicación difamatoria. En Hutchinson v. Proxmire, supra, el Foro Máximo federal expresó: "[c]learly, those charged with defamation cannot, by their own conduct, create their own defense by making the claimant a public figure". Íd., pág. 135.

Como corolario de lo anterior, **es irrelevante a la determinación de estatus como figura pública** todo lo publicado o todas las actividades en las que se vio envuelta la parte demandante **posterior** a la publicación de la difamación. Véase Fridman v. Orbis Business Intelligence Limited, 229 A.3d 494, 505 (D.C. 2020); Durham v. Cannan Communications, Inc., 645 S.W.2d 845, 850

(Tex. App. Amarillo 1982); Ramirez v. Rogers, 540 A.2d 475, 477, 46 Ed. Law Rep. 599 (Me. 1988) [status determinations are made as of "the time the [defamatory] statements were made"]. Sobre el particular, el tratadista Rodney A. Smolla expone:

> It is important to emphasize that the inquiry into private or public figure status is inherently *backward-looking*. **The issue is whether, *prior to the defamation*, the plaintiff was a public figure**. This essential point is corollary to the anti-bootstrap principle, which provides that a defendant cannot turn the plaintiff into a public figure by the notoriety the defendant's own defamatory statement visited upon the plaintiff. (Énfasis suplido). Rodney A. Smolla, Law of Defamation, págs. 2-57-58, Thompson Legal Publ., 2nd ed., 2020.

B.

En nuestro ordenamiento se han adoptado los principios generales esbozados en la jurisprudencia federal para clasificar a una persona como figura pública. Así, este Tribunal ha dicho, que para concluir que una persona demandada ha adquirido la condición de figura pública, deben **concurrir** en ella los elementos siguientes:

> (1) especial prominencia en los asuntos de la sociedad; (2) capacidad para ejercer influencia y persuasión en la discusión de asuntos de interés público, **y** (3) participación activa en la discusión de controversias públicas específicas con el propósito de inclinar la balanza en la resolución de cuestiones involucradas. Colón Ramírez v. Televicentro de PR, supra, pág. 708.

Además, expresamos que el "eje crítico" de esa determinación es "la importancia e interés público del asunto o controversia de que se trate". Garib Bazain v.

Clavell, supra, pág. 483. Por ello, se ha desarrollado un enfoque funcional que no concentra tanto su atención "en el análisis abstracto del [e]status de la persona afectada como en el contexto específico en que se da la controversia". Soc. de Gananciales v. López, 116 DPR 112, 117 (1985). Cabe señalar que, aunque en el pasado se ha hecho referencia a las distinciones que hizo el Tribunal Supremo federal en Gertz v. Welch, supra, en torno a la figura pública para todo propósito y la figura pública para propósito limitado, en nuestra jurisdicción nunca se ha aplicado expresamente esta última clasificación como una subcategoría de la figura pública.

El caso Oliveras v. Paniagua Diez, supra, presentaba una controversia relevante al caso de epígrafe. Correspondía, entre otras controversias, determinar si el Sr. Oliveras era una figura pública. Esto con el propósito de establecer si tenía que satisfacer el estándar riguroso de malicia real para probar su causa de acción por difamación que presentó contra el Sr. Paniagua Diez. La controversia se originó con un artículo que publicó el señor Oliveras, periodista y jefe de redacción de la sección de deportes de El Nuevo Día, en la que criticó al señor Paniagua Diez por la ejecución del equipo de baloncesto del que era propietario. A raíz de ello, el señor Paniagua Diez ripostó con un artículo de su autoría que también se publicó en la sección de Deportes del rotativo en el que señaló ciertas imputaciones al señor

Oliveras. Este último demandó al señor Paniagua Diez, pues alegó que el contenido de ese artículo era difamatorio.

Allí se determinó que el señor Oliveras era una figura pública. Se particularizó que este, no solo era un periodista profesional, sino el jefe de redacción de la sección de Deportes de uno de los rotativos principales del país. Se dijo que debido al cargo que ostentaba, este "no limitaba su función a simplemente informar eventos noticiosos". Íd., pág. 265. Específicamente que, en el tema de deportes, el señor Oliveras "tenía amplia libertad para expresar, comentar y juzgar". Íd. Dijimos, además:

> Es innegable que el papel que desempeñaba Oliveras dentro del campo deportivo es uno de verdadera influencia, llegando a un gran sector de la población con sus opiniones y críticas. Que un periodista tenga acceso a un público ávido de noticias en forma de comentarios, resulta incompatible con la reclamación del status de figura privada. "Parece estar fuera de duda que el sujeto activo de aquella particular forma de comunicación masiva, que es la noticia periodística, es el periodista... en la base de todo ello está siempre el individuo, el escritor, el periodista."...Con referencia a los medios de información, se ha dicho: Su influencia y su responsabilidad son enormes, porque el impacto que produce en la opinión pública es una de las fuerzas motivadora[s] más rigurosas de nuestra sociedad. J. Hohenberg, El Periodista Profesional, México, Ed. Letras, 1964, pág. 24. Oliveras v. Paniagua Diez, supra. pág. 267.

Si bien en ese caso se resaltó en términos generales la labor importante del periodista, en ninguna parte de ese dictamen se impuso una regla automática y de aplicación uniforme de la categoría de figura pública a todo miembro de la prensa. Nótese que el Tribunal fue muy específico en

resaltar las facultades que tenía el señor Oliveras en cuanto al poder decisional y editorial en la sección que manejaba. Tan es así, que el señor Oliveras podía escribir y publicar una crítica directa al propietario de un equipo de baloncesto nacional, como ocurrió en ese caso. Por lo tanto, en Oliveras v. Paniagua Diez, supra, no se resolvió que todo periodista, por motivo de su profesión, debe ser considerado como una figura pública para propósitos de las acciones por difamación. En vez, la determinación sustenta que se presta atención particularizada a las circunstancias de cada parte demandante, así como de las controversias envueltas, para establecer si esta es una figura pública o privada.

Dado que el contenido difamatorio en Oliveras v. Paniagua, supra, estaba intrínsecamente relacionado con la profesión del periodista, no hubo la necesidad de expresarse sobre si el señor Oliveras debía ser considerado figura pública para todos los aspectos de su vida personal o únicamente debía limitarse a aquellos aspectos relacionados con su profesión. No obstante, la interrogante no ha eludido a diversos foros federales y estatales, cuyas determinaciones han sido diversas. Mientras que existe cierta concordancia entre los distintos circuitos de apelaciones en el foro federal para determinar que las entidades mediáticas, sus publicadores y editores son

figuras públicas,[13] las determinaciones han sido mixtas en cuanto al estatus de los periodistas y reporteros.

Sobre el particular, el tratadista Rodney Smolla afirma que "no todos los periodistas, y ciertamente no todos los periodistas prominentes, deberían ser tratados como figuras públicas para todo propósito". (Traducción suplida). Smolla, op. cit., págs. 2-212-213. Así, existe una proliferación de determinaciones en los foros mencionados que han tratado a los periodistas o reporteros televisivos como figuras públicas de propósito limitado. Estos incluyen: una reportera de Chicago que ganó cuatro Premios Emmy por sus reportajes;[14] una reportera en temas de salud que también se promocionaba en anuncios del canal;[15] un columnista para el periódico en asuntos de fraude al sistema de salud;[16] un columnista para una revista en temas de recursos naturales,[17] entre otros.[18]

---

[13] Véase, por ejemplo, Celle v. Filipino Reporter Enterprises Inc., 209 F.3d 163, 172, 176-77 (2d Cir. 2000); Winters v. Greeley, 189 Ill. App. 3d 590, 136 Ill. Dec. 898, 545 N.E.2d 422, 424-28 (1st Dist. 1989); Loeb v. New Times Communications Corp., 497 F. Supp. 85, 88-89, 92 (S.D. N.Y. 1980); Loeb v. Globe Newspaper Co., 489 F. Supp. 481, 485-86 (D. Mass. 1980); Live Oak Publishing Co. v. Cohagan, 234 Cal. App. 3d 1277, 286 Cal. Rptr. 198, 205 (3d Dist. 1991); Velle Transcendental Research Ass'n, Inc. v. Sanders, 518 F. Supp. 512, 517 (C.D. Cal. 1981).

[14] Jacobson v. CBS Broadcasting, Inc., 2014 IL App (1st) 132480, 386 III. Dec. 12, 19 N.E.3d 1165, 42 Media L. Rep. (BNA) 2419 (App. Ct. 1st Dist. 2014), appeal denied (Ill. Jan. 28, 2015).

[15] Wayment v. Clear Channel Broadcasting, Inc., 116 P.3d 271 (Utah, 2005)

[16] Renner v. Donsbach, 749 F. Supp. 987 (W.D. Mo. 1990).

[17] Rybacheck v. Sutton, 761 P.2d 1013 (Alaska 1988).

[18] Véase, por ejemplo, O'Donnell v. CBS, Inc., 782 F.2d 1414 (7th Cir., 1986). Sobre la aplicación de la figura pública para propósito limitado en profesiones afines, véase Lerman Flynt Distributing Co., Inc., 745 F.2d 123 (2nd Cir. 1984); Marcone v. Penthouse Intern Magazine for Men, 754 F.2d 1072 (3rd Cirt., 1985); Trotter v. Jack Anderson Enterprises, Inc., 818 F.2d 431 (5th Cir., 1987).

Asimismo, tribunales federales y estatales también han clasificado a ciertos reporteros y periodistas como figuras públicas. Entre estos, figuran: un editor en jefe revista universitaria;[19] un comentarista radial muy conocido y dueño de su propia estación radial;[20] un televangelista;[21] comentaristas conocidos con libertad de exponer sus puntos de vista,[22] entre otros.

Ahora bien, aunque puedan delimitarse patrones en ciertas categorías de profesionales que se consideran figuras públicas, la tendencia en las determinaciones de otras jurisdicciones ha estado encaminada a no aplicar normas genéricas (*blanket rules*) por profesión. Cónsono con ello, y a tono con los pronunciamientos anteriores de este Tribunal, soy del criterio de que, ante el surgimiento de una controversia *bona fide* sobre si un periodista demandante en un pleito por difamación es figura privada o pública —sea para todo propósito o para propósito limitado— lo apropiado es que esta se resuelva según un análisis integral de todas las circunstancias particulares de cada caso. Para ello, en nuestra jurisdicción, el peso de poner al tribunal en posición para tomar una determinación recae en quien levanta como defensa el estatus de figura pública.

---

[19] Winters v. Greely, 189 Ill. App. 3d 690, 136 Ill. Dec. 898, 545 N.E.2d 422 (1st. Dist. 1989).
[20] Celle v. Filipino Reporter Enterprises, Inc., 209 F.3d 163 (2nd Cir. 2000).
[21] Falwell v. Penthouse Intern., Ltd., 521 F. Supp. 1204 (W.D. Va. 1981).
[22] Braden v. News World Communications, Inc., 18 Media L. Rep. (BNA) 2209, 2210, 1991 WL 161497 (D.C. Super. Ct. 1991); Braden v. News World Communications, Inc., 18 Media L. Rep. (BNA) 2209, 2210, 1991 WL 161497 (D.C. Super. Ct. 1991).

Lo anterior requiere que se presente prueba que demuestre la concurrencia de los elementos esbozados por este Tribunal, a saber: (1) que la persona tenga especial prominencia en los asuntos de la sociedad, (2) la capacidad para ejercer influencia y persuasión en la discusión de asuntos de interés público, y (3) que se inserte en la participación activa en la discusión de controversias públicas específicas con el propósito de inclinar la balanza en la resolución de cuestiones involucradas. Colón Ramírez v. Televicentro de PR, supra, pág. 708. El hecho de que la parte demandante sea periodista o reportera de profesión, por sí solo, aunque relevante, no es factor suficiente para concluir que estos requisitos concurren.

VI

La controversia medular en este caso se reduce a determinar si, conforme al derecho aplicable, la señora Yesenia Torres Figueroa era una figura pública para el 3 y 4 de septiembre de 2013, fechas en que ocurrieron las alegadas expresiones difamatorias por las que instó su demanda por difamación. Esto para determinar si el Tribunal de Apelaciones erró al revocar la Resolución que emitió el Tribunal de Primera Instancia en la que concluyó que esta era figura pública. Según el razonamiento del foro primario, este resolvió conforme a la doctrina jurídica establecida por el Tribunal Supremo sobre el carácter de figura pública de un periodista y a la prueba documental que tenía ante sí.

Ambos peticionarios sostienen que la señora Torres Figueroa era una figura pública al momento de los hechos. En apoyo a su contención, exponen, en síntesis: (1) que la recurrida era reportera de Noticentro en WAPA TV desde el 2012; (2) que entre el 2004 y el 2005 trabajó como reportera para la Revista Vea y que su labor consistía en entrevistar a artistas y preparar distintos escritos que eran publicados semanalmente; (3) que en el 2005 laboró para Wapa Radio, en donde moderó un programa radial en el que se hacían entrevistas sobre temas políticos y denuncias policiacas; (4) que en el 2006 laboró como reportera para la estación radial NotiUno, donde cubrió noticias sobre eventos políticos y policiacos, los cuales reportaba mediante llamada telefónica y preparaba escritos para reportarse; (5) que en el 2008 laboró como reportera en la estación Radial 96 cubriendo eventos políticos, gubernamentales, atmosféricos y noticias sobre acontecimientos inesperados; (6) que entre el 2008 y el 2010 trabajó como oficial de prensa en el Senado y relacionista profesional, en donde redactó comunicados de prensa relacionados con las vistas públicas que se celebraban; (7) que entre el 2010 y el 2012 fue reportera para WIPR e hizo reportajes varias veces al mes para la cadena CNN; (8) que entre el 2010 y el 2012 laboró para la revista *New Condado*, y redactó reportajes sobre política y entretenimiento; (9) que en diversas etapas de su carrera profesional fue moderadora del programa radial *En caliente*

*con la Jovet*, del programa *El Debate* y reportera de los noticiarios *Noticias 24/7* y *Radio Noticias*, en tópicos de eventos de última hora, en los cuales atendió llamadas del público y reportaba "desde la calle"; (10) que desde el 2012, es reportera para el noticiario en la cadena televisiva WAPA TV y que, hasta la fecha, era la mujer ancla del noticiero en la edición de los fines de semana.

Alegaron que, de la deposición que se le realizó a la recurrida, esta había indicado que redactaba todos sus reportajes, que no eran revisados ni modificados antes de ser reportados, transmitidos o televisados. Sostuvieron que, como periodista, reportera y redactora, la recurrida tiene fácil acceso a los medios de difusión pública y que conoce a personas en las altas esferas de la policía, Cámara y Senado. Indicaron que esta ganó un reconocimiento en el 2012 concedido por la ASPRO, bajo la categoría de "noticia del momento", que, al momento de presentar su escrito ante este foro, tenía alrededor de 8,400 seguidores en las redes sociales, redes en las cuales sube contenido de su vida personal.

Por su parte, la señora Torres Figueroa no disputa su trayectoria como reportera y periodista para radio y televisión. Tampoco que ha trabajado en canales televisivos y radiales principales del país y que, al momento de los hechos, era mujer ancla del Noticiero de WAPA TV en los fines de semana. Tampoco desmiente que ha participado y moderado programas radiales y televisivos en torno al

debate de asuntos en nuestra sociedad. En cambio, plantea que el ostentar estos puestos en carrera profesional, por si solo, no son elementos suficientes para determinar si era una figura pública y que, a la luz de la prueba que se presentó, no existían elementos suficientes para que se concluyera que ella tenía especial prominencia en los asuntos de la sociedad en el 2013.

La señora Torres Figueroa indicó que antes del 2013, ninguno de los empleos que tuvo, le permitió tener participación activa en la discusión de controversias específicas con el propósito de inclinar la balanza en la resolución de las cuestiones envueltas. Sostuvo, que no tenía ninguna potestad de desviarse de lo que se le presentaba en el *teleprompter* o lo que se le ordenaba reportar, cualidades afines del periodista informativo que no tiene potestad para integrar su propio criterio u opiniones a través de los medios a los que tiene acceso por razón de su profesión. Refutó que en la deposición que se le cursó haya expresado que tenía control editorial sobre el material que redactaba como periodista y que este no era revisado por algún superior.

Asimismo, la recurrida adujo que el Tribunal de Primera Instancia no podía tomar en consideración eventos posteriores a las fechas en que se hicieron las expresiones en controversia para determinar si esta era figura pública para propósitos de la causa de acción por difamación objeto del caso ante nosotros. Concluyó que los peticionarios no

pudieron presentar acontecimientos fácticos para demostrar que concurren los tres requisitos esbozados en nuestra jurisdicción para considerarse como figura pública.

Tras examinar el expediente, así como las posiciones de las partes, coincido con la contención de la señora Torres Figueroa. Según se ha determinado, le correspondía a la parte demandada apoyar la defensa que levantó sobre la clasificación de la demandante como figura pública con prueba que permitiera determinar que, **al momento en que ocurrieron los actos difamatorios alegados, la demandante:** (1) tenía especial prominencia en los asuntos de la sociedad; (2) tenía capacidad para ejercer influencia y persuasión en la discusión de asuntos de interés público, **y** (3) participaba activamente en la discusión de controversias públicas específicas con el propósito de inclinar la balanza en la resolución de cuestiones involucradas.

La prueba que presentaron los peticionarios no sustenta que para el 3 y 4 de septiembre de 2013 la señora Torres Figueroa ostentara un grado de "notoriedad y prominencia en la vida puertorriqueña, [y] en los asuntos de nuestra sociedad" que justificara que se le tratase como una figura pública para todos los propósitos. <u>Torres Silva v. El Mundo</u>, supra, pág. 423. Recordemos que, conforme a lo dispuesto por el Tribunal Supremo federal, los tribunales no deben presumir livianamente que la participación de un ciudadano en asuntos comunitarios y profesionales la

convierte en figura pública para todos los propósitos. Gertz v. Robert Welch, Inc., supra, pág. 352.

Ciertamente, que la señora Torres Figueroa tuviera una carrera profesional exitosa en el periodismo la hace reconocible ante la comunidad, pero no necesariamente prominente. Los peticionarios tampoco presentaron prueba sobre cómo, antes de las fechas en que ocurrieron los hechos, la recurrida participaba activa y voluntariamente en la discusión de controversias públicas con el propósito de inclinar la balanza en la resolución de estas o como esta podía compartir su juicio u opinión para lograr lo anterior. Asimismo, su labor como oficial de prensa y relacionista profesional en la Legislatura tampoco le proveía la libertad para expresar sus propias ideas u opiniones.

Tanto el Tribunal de Primera Instancia como los peticionarios, razonaron que, por virtud de su profesión, la recurrida también tenía un acceso particular a los medios de comunicación. Sin embargo, ninguna de las partes demostró que, para la fecha de los hechos, la demandante sobrepasara su rol como reportera de periodismo informativo para insertarse voluntariamente en debates o controversias públicas en las que emitiera su opinión. Tampoco que, para esa fecha, tenía la capacidad para usar ese acceso para compartir sus propias ideas o para defenderse de los ataques instados contra su vida privada y familiar.

Los peticionarios tampoco presentaron prueba de que los propios actos de la señora Torres Figueroa, razonablemente, invitaran al comentario por haberse sometido voluntariamente a la palestra pública en algún asunto en particular, por motivo de su profesión o por alguna otra razón. Aun si se entendiera que la señora Torres Figueroa al momento de los hechos era una figura pública de propósito limitado, las expresiones alegadas como difamatorias no están razonablemente relacionadas con sus actuaciones voluntarias o con sus labores como reportera o periodista. Coincido, además, con el Tribunal de Apelaciones que al anunciar su embarazo en su red social "Twitter", la recurrida no hacía una invitación a que se cuestionara la paternidad del hijo que esperaba, según se le imputa a la parte demandada, por lo que este acto voluntario de la recurrida no puede ser suficiente para determinar su estatus como figura pública.

Por último, el Tribunal de Primera Instancia determinó que la peticionaria también se convirtió en figura pública involuntariamente al haber formado parte de un proceso criminal que se llevó en su contra. No obstante, los hechos que originaron esa controversia se remontan al 25 de enero de 2014, meses después de que se difundieran las expresiones que se alegan son difamatorias. Según vimos anteriormente, es irrelevante a la determinación de estatus como figura pública los acontecimientos posteriores a la publicación de las alegadas expresiones difamatorias. Por

lo tanto, el Tribunal de Primera Instancia no podía tomar en consideración ningún tipo de evidencia de la notoriedad de la recurrida a raíz de los hechos relacionados con el caso penal en su contra para hacer su determinación.

En concordancia al análisis que antecede y con la determinación del Tribunal de Apelaciones, opino en que la prueba que consta en el expediente es insuficiente para concluir que, conforme a nuestro ordenamiento, la señora Torres Figueroa era una figura pública a la fecha en que se emitieron las expresiones en controversia. Por ello, estoy conforme con la sentencia que se emite hoy.


                              Maite D. Oronoz Rodríguez
                                  Jueza Presidenta

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Yesenia Torres Figueroa<br><br>Recurrida<br><br>v.<br><br>Fernando Vélez Rivera y otros<br><br>Peticionarios<br>_____<br><br>Yesenia Torres Figueroa<br><br>Recurrida<br><br>v.<br><br>Fernando Vélez Rivera y otros<br><br>Peticionarios | CC-2017-0505<br>cons. con<br>CC-2017-0507 |

Opinión disidente emitida por el Juez Asociado señor MARTÍNEZ TORRES a la que se unen la Jueza Asociada señora PABÓN CHARNECO y el Juez Asociado señor FELIBERTI CINTRÓN.

En San Juan, Puerto Rico, a 25 de octubre de 2022.

Disiento respetuosamente de la determinación a la que hoy se arriba. La controversia ante nos se circunscribe a determinar cuál es el estándar de prueba de la demandante para que prospere su causa de acción por difamación. Lo anterior conlleva evaluar si es figura pública una persona que: ha sido ancla de Noticentro 4 los fines de semana; ha fungido como reportera para la revista Vea; ha sido moderadora del programa "Opine Usted" de WAPA Radio; ha

sido reportera de eventos políticos y policiacos en NotiUno y Red 96; ha sido oficial de Prensa del Senado de Puerto Rico; ha sido reportera cubriendo reportajes diarios en WIPR y "Telenoticias" de Telemundo; ha sido reportera para CNN Español; ha sido reportera de temas de política y entretenimiento, cubriendo gobernantes y políticos de oposición en la revista New Condado; ha sido moderadora en el programa radial "En caliente con la Jovet"; ha sido moderadora en el programa radial "El Debate" de WIPR; ha sido Coordinadora de edición de la sección de las Noticias WIPR; ha sido reportera de "Noticias 24/7" en WIPR; ha sido moderadora de televisión y radio en las noticias por la mañana del Canal 6; y ha recibido el reconocimiento de ASPRO bajo la categoría de "noticia del momento".

La Sra. Yesenia Torres Figueroa no es figura pública por el mero hecho de ser una periodista. Lo anterior presumiría que toda persona que incurra en una actividad periodística, sin importar el alcance de su labor, es una figura pública. Esto sería incorrecto. En su lugar, en este caso debimos concluir que **la señora Torres Figueroa es una figura pública en atención a su trayectoria periodística.** Mediante esta se ha convertido en una persona con un acceso particular a los medios de comunicación, que no tiene la figura privada, como lo sería un periodista con una audiencia muy limitada.

Además, debido a esta trayectoria, ha asumido el riesgo de estar expuesta al escrutinio público.

Por entender que, por su notoriedad, la Sra. Yesenia Torres Figueroa es una figura pública para todos los propósitos, respetuosamente disiento.

I

A.

Nuevamente tenemos ante nuestra consideración el problema perenne de reconciliar el derecho a la libertad de expresión con el derecho a la intimidad de los individuos. Gómez Márquez *et al.* v. El Oriental, 203 DPR 783, 795 (2020). En atención a este conflicto, en New York Times Co. v. Sullivan, 376 US 254 (1964), el Tribunal Supremo federal sostuvo que las reglas que gobiernan la acción de difamación estaban sujetas a restricciones predominantes por parte del derecho a la libertad de expresión. Smolla, Law of Defamation 2d, Sec. 2.1 (2021). De esta manera, se estableció que para que un oficial público recobrara por daños a su reputación debe demostrar, mediante prueba clara y convincente, que una expresión no es difamatoria, aunque resulte falsa, a menos que se hiciera mediando malicia real, es decir, a sabiendas de que es falsa o con grave menosprecio si lo era. New York Times Co. v. Sullivan, supra, págs. 279-280. En cuanto a la figura privada, para que el demandante prevalezca en su acción es suficiente que

establezca que medió negligencia. Oliveras v. Paniagua Diez, 115 DPR 257, 262 (1984).

Posteriormente, se expandió la normativa de New York Times Co. v. Sullivan, supra, a casos en los cuales el demandante es una figura pública. Walker v. Associated Press, 391 US 966 (1968); Curtis Publishing Co. v. Butts, 388 US 130 (1967). Sin embargo, no fue hasta Gertz v. Robert Welch, Inc., 418 US 323 (1974), que se delinearon los contornos del estatus de figura pública con más detalle. David A. Elder, Defamation: A Lawyer's Guide, Sec. 5.6 (2003). No obstante, previo a la decisión en Gertz v. Robert Welch, Inc., supra, en Rosenbloom v. Metromedia, Inc., 403 US 29 (1971), la opinión de pluralidad del Juez Brennan alteró el enfoque de New York Times Co. v. Sullivan, supra, del estatus de la víctima de la difamación al estatus de la expresión misma. Smolla, supra, Sec. 2.9. Así, J. Brennan indicó: "If a matter is a subject of public or general interest, it cannot suddenly become less so merely because a private individual is involved, or because in some sense the individual did not 'voluntarily' choose to become involved". Rosenbloom v. Metromedia, Inc., supra, pág. 43. Por consiguiente, sostuvo: "The public's primary interest is in the event; the public focus is on the conduct of the participant and the content, effect, and significance of the conduct, not the participant's prior

anonymity or notoriety." Íd. Sin embargo, esta postura fue revocada en Gertz v. Robert Welch, Inc., supra.

En Gertz v. Robert Welch, Inc., supra, el Tribunal Supremo federal se dio a la tarea de diferenciar las distintas clases de demandantes en una acción de difamación. Allí, un policía de nombre Nuccio le disparó y dio muerte a un joven de nombre Nelson. A raíz de lo sucedido, las autoridades estatales procesaron a Nuccio y, finalmente, obtuvieron una convicción por asesinato en segundo grado. No obstante lo anterior, la familia de Nelson contrató a Elmer Gertz, un abogado prominente, para que los representara en la litigación civil en contra de Nuccio.

Robert Welch, Inc. publicaba una revista llamada *American Opinion* que advertía que existía una conspiración nacional para desacreditar a las agencias policiacas locales y crear en su lugar una fuerza policiaca nacional, capaz de soportar una dictadura comunista. En marzo de 1969, la revista publicó un artículo titulado "FRAME-UP: Richard Nuccio And The War on Police". Allí, señalaron a Gertz como el arquitecto del "frame-up". Además, expresó que Gertz había sido un oficial de la entidad que, se alegó, abogaba por el derrocamiento violento del gobierno. Entre otros comentarios, tildó a Gertz de leninista.

El Tribunal Supremo federal delineó la controversia de la manera siguiente: si un periódico o emisora que publica falsedades difamatorias contra una persona que no es oficial público ni figura pública puede reclamar algún privilegio constitucional. Para determinar que Gertz no era una figura pública, el Tribunal estableció la dicotomía entre figura pública y figura privada. Para hacer esta distinción utilizó dos razonamientos: (1) el acceso a los medios de comunicación y (2) la asunción de riesgo. Smolla, supra, Secs. 2.13-2.14. En cuanto al razonamiento de acceso a los medios de comunicación el referido foro dispuso lo siguiente:

> The first remedy of any victim of defamation is self-help —using available opportunities to contradict the lie or correct the error and thereby to minimize its adverse impact on reputation. Public officials and public figures usually enjoy significantly greater access to the channels of effective communication and hence have a more realistic opportunity to counteract false statements than private individuals enjoy. Private individuals are therefore more vulnerable to injury, and the state interest in protecting them is correspondingly greater. Gertz v. Robert Welch, Inc., supra, pág. 344.

En cuanto al razonamiento de asunción de riesgo añadió: "Even if the foregoing generalities do not obtain in every instance, the communications media are entitled to act on the assumption that public officials and public figures have voluntarily exposed themselves to increased risk of injury from defamatory falsehood concerning them". Íd., pág. 345. Añadió que, a diferencia de la

figura pública, la figura privada "no ha renunciado a ninguna parte de su interés en la protección de su propio nombre y, en consecuencia, tiene un llamado más apremiante a los tribunales para la reparación del daño infligido por la falsedad difamatoria". (Traducción nuestra). Íd.[1] Así, el Tribunal Supremo federal concluyó lo siguiente en Gertz v. Robert Welch, Inc., supra: "Thus, private individuals are not only more vulnerable to injury than public officials and public figures; they are also more deserving of recovery". Íd. Por ende, el razonamiento del Tribunal Supremo federal en Gertz v. Robert Welch, Inc., supra, procuró un balance más apropiado entre el interés público en una prensa desinhibida y la necesidad —igualmente apremiante— de reparación judicial por declaraciones difamatorias. Time, Inc. v. Firestone, 424 US 448, 456 (1976).

En atención a lo anterior, determinó que a la figura pública le aplicaba el estándar delineado en New York Times Co. v. Sullivan, supra. En cuanto a la figura privada, sostuvo que "siempre que no impongan responsabilidad sin culpa, los estados pueden definir por sí mismos el estándar apropiado de responsabilidad para quien publica expresiones difamatorias en perjuicio de un

---

[1] El texto original lee como sigue: "He has relinquished no part of his interest in the protection of his own good name, and consequently he has a more compelling call on the courts for redress of injury inflicted by defamatory falsehood".

particular". (Traducción nuestra). <u>Gertz v. Robert Welch, Inc.</u>, <u>supra</u>, pág. 347.[2] A esos efectos:

> [T]he key element in determining public figure status under *Gertz* was voluntary action attracting public attention. Public figures had voluntarily assumed the risk of injury to their reputations and would enjoy greater access to the media for self-help in counteracting defamatory falsehoods. Private individuals, lacking these characteristics, were both more vulnerable to injury and more deserving of recovery. Note, <u>Defining a Public Controversy in the Constitutional Law of Defamation</u>, 69 Va. L. Rev. 931, 938 (1983).

Por otro lado, en <u>Gertz v. Robert Welch, Inc.</u>, <u>supra</u>, se establecieron unas subcategorías de figura pública: (1) la figura pública para todos los propósitos ("all purpose") o para propósitos generales ("general purpose"), y (2) la figura pública de propósito limitado ("limited-purpose"). <u>Smolla</u>, <u>supra</u>, Sec. 2.15.[3] Las primeras son personas que ocupan posiciones de tal poder e influencia que son consideradas figuras públicas para todos los propósitos. <u>Íd</u>. Por otra parte, las figuras públicas de propósito limitado son aquellas que "se han lanzado a la vanguardia de controversias públicas particulares para influir en la resolución de los

---

[2] El texto original en inglés lee de la manera siguiente: "so long as they do not impose liability without fault, the States may define for themselves the appropriate standard of liability for a publisher or broadcaster of defamatory falsehood injurious to a private individual".

[3] En <u>Gertz v. Robert Welch, Inc.</u>, 418 US 323, 345 (1974), se sugiere una tercera categoría de figura pública: la figura pública involuntaria. Esta se define como "an 'exceedingly rare' breed who attain their status without any purposeful action". <u>Íd</u>., pág. 937.

problemas involucrados". (Traducción nuestra). <u>Gertz v. Robert Welch, Inc.</u>, <u>supra</u>, pág. 345.[4]

Al final, indicó que para establecer que Gertz era una figura pública existían dos opciones: (1) se trata de una persona que ha alcanzado una fama o notoriedad tan generalizada que se convierte en una figura pública para todos los propósitos y en todos los contextos; o (2) es un individuo que se involucra en una "controversia pública" particular y, por lo tanto, se convierte en una figura pública para una gama limitada de temas. Concluyó que, aunque Gertz era reconocido en algunos círculos, no había alcanzado fama generalizada o notoriedad en la comunidad.

Determinado que Gertz no era una figura pública para todos los propósitos, el Tribunal pasó a dilucidar si era una figura pública de propósitos limitados. Al respecto, indicó que Gertz no participó en el procedimiento criminal de Nuccio. Además, sostuvo que nunca discutió la litigación criminal o civil con la prensa y nunca fue citado como que lo hizo. Por consiguiente, concluyó que Gertz no se había lanzado al vórtice de la controversia pública.

Para establecer que una persona es una figura pública para todos los propósitos es necesario que exista

---

[4] El texto original dispone: "More commonly, those classed as public figures have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved".

evidencia de fama general o notoriedad en la comunidad. Gertz v. Robert Welch, Inc., supra, pág. 352.

Ahora bien, para establecer que una persona es una figura pública limitada es necesario demostrar algo más. Esto es, que (1) existe una "controversia pública" y (2) que el demandante está involucrado en esa "controversia pública". A esos efectos:

> *Gertz* also cast doubt on the institutional competence of the judiciary to make content-based determinations of public interest. **The public controversy requirement remained in the limited-purpose public figure test as a vestige of Justice Harlan's language in *Butts*, but it lay dormant.** In *Gertz*, the Court did not analyze the nature of the public controversy; it focused entirely on the absence of "voluntariness". (Énfasis suplido). Defining a Public Controversy in the Constitutional Law of Defamation, 69 VA. L. REV. 931, 938-939 (1983).

Gertz v. Robert Welch, Inc., supra, prescribió unos lineamientos más detallados para establecer cuándo estamos ante una figura pública para todos los propósitos y cuándo estamos ante una figura pública para propósitos limitados. No obstante, continuó existiendo duda sobre quiénes componen ese grupo selecto ("small group") de personas, véase, Wolston v. Reader's Digest Ass'n, Inc., 443 US 157, 165 (D.C. Cir. 1979), que se pueden catalogar como figura pública para todos los propósitos.

Al igual que el Tribunal de Apelaciones para el Distrito de Columbia en Waldbaum v. Fairchild Publications, Inc., 627 F.2d 1287 (1980), sostengo que Gertz v. Robert Welch, Inc., supra, no desarrolló por

completo la descripción de la figura pública para todos los propósitos. Véase, Waldbaum v. Fairchild Publications, Inc., supra, pág. 1292. Por su parte, entiendo que lo expresado en Waldbaum v. Fairchild Publications, Inc., supra, provee unos lineamientos más específicos para evaluar cuándo estamos ante una figura pública. Al respecto, el Tribunal expresó lo siguiente:

> From analyzing Gertz and more recent defamation cases, we believe that a person can be a general public figure only if he is a "celebrity"[,] his name a "household word" whose ideas and actions the public in fact follows with great interest. We also conclude that a person has become a public figure for limited purposes if he is attempting to have, or realistically can be expected to have, a major impact on the resolution of a specific public dispute that has foreseeable and substantial ramifications for persons beyond its immediate participants. In undertaking this examination, a court must look through the eyes of a reasonable person at the facts taken as a whole. Íd., pág. 1292.

Al examinar si una persona es figura pública, primero, el tribunal tiene que determinar si el demandante es una figura pública para todos los propósitos. Íd., 1294. Para esta encomienda, el Tribunal de Apelaciones para el Distrito de Columbia señaló los siguientes criterios: (1) si tiene acceso a los medios de comunicación si es difamado; (2) la preocupación del público con la persona indica que los medios de comunicación cubrirán la respuesta de la persona a las expresiones que entiende son incorrectas o infundadas, y (3) si la persona ha asumido el riesgo de que la

exposición al público podría conducir a declaraciones erróneas sobre su persona. Íd.

Además, señaló una serie de factores que pueden ayudar al juzgador a determinar si la persona ha alcanzado el nivel de notoriedad e influencia necesario para convertirse en figura pública para todos los propósitos, tales como la cobertura previa del reclamante en la prensa. Íd., pág. 1295. Además:

> At all times, the judge should keep in mind the voluntariness of the plantiff's prominence and the availability of self-help through press coverage of responses in other words, whether the plaintiff has assumed the risk of reputational injury and whether he has access to the media. Íd.

Por su parte, para encontrar que una persona es figura pública no se requiere fama generalizada. En su lugar, "la pregunta es si el individuo ha logrado el grado necesario de notoriedad donde fue difamado, es decir, donde se publicó la difamación". Íd., pág. 1295, n. 22.[5]

Por nuestra parte, hemos indicado que los elementos que deben concurrir para concluir que una persona ha adquirido la condición de figura pública son: (1) la especial prominencia en los asuntos de la sociedad; (2) la capacidad para ejercer influencia y persuasión en la discusión de asuntos de interés público, y (3) la

---

[5] El texto original en inglés lee de la manera siguiente: "the question is whether the individual had achieved the necessary degree of notoriety where he was defamed i.e., where the defamation was published".

participación en la discusión de controversias públicas específicas con el propósito de inclinar la balanza en la resolución de las cuestiones involucradas. Colón, Ramírez v. Televicentro de P.R., 175 DPR 690, 708 (2009).

Por último, la determinación de si una persona es una figura pública es una cuestión de derecho a ser determinada por el tribunal. Tavoulareas v. Piro, 817 F.2d 762, 772 (D.C. Cir. 1987).

Resulta necesario resaltar que la determinación de si un demandante es figura pública o privada para efectos de una acción de difamación no dispone de los méritos de la controversia. Ahora bien, esta determinación incide en el estándar de prueba necesario para establecer que las expresiones son difamatorias.

Tampoco debemos perder de perspectiva los intereses que se tratan de adelantar al establecer distintos estándares de prueba dependiendo de si la persona es figura pública o privada. El punto de referencia que debe guiar a un tribunal a la hora de determinar si un demandante es una figura pública o privada es el nivel de acceso a los medios de comunicación y en qué grado el reclamante ha asumido una mayor exposición al escrutinio público. Gertz v. Robert Welch, Inc., supra, págs. 344-345. Si prestamos atención a estos criterios nos percataremos de que "los particulares no solo son más vulnerables a las lesiones [a su reputación] que los

funcionarios públicos y las figuras públicas; también son más merecedores de resarcimiento". (Traducción nuestra). Íd., pág. 345.[6]

B.

Aclarado lo anterior, nos corresponde evaluar si la señora Torres Figueroa es una figura pública para todos los propósitos. De contestar en la afirmativa, se tornaría innecesario evaluar si es una figura pública limitada. Por consiguiente, resultaría igualmente innecesario determinar si las alegadas expresiones difamatorias se dieron en el contexto de una controversia pública, análisis reservado para determinar si una persona es figura pública limitada.

La señora Torres Figueroa no es cualquier periodista. Esta cuenta con una larga y exitosa carrera, a través de la cual ha sido galardonada por la Asociación de Periodistas de Puerto Rico (ASPPRO) en la categoría de "noticia del momento". Cuando se realizaron las expresiones que se alegan son difamatorias contaba con nueve años en la industria periodística. Durante este periodo se desempeñó como: ancla del noticiero de los fines de semana; reportera a través de la radio, la televisión y revista, sobre temas de política y

---

[6] El texto original en inglés lee de la manera siguiente: "private individuals are not only more vulnerable to injury than public officials and public figures; they are also more deserving of recovery".

entretenimiento; moderadora en programas radiales y de televisión, como "El Debate", "En caliente con la Jovet" y "Opine Usted"; coordinadora de edición de la sección de noticias de WIPR; y como oficial de prensa del Senado de Puerto Rico y relacionista profesional. Estas funciones las desempeñó en las revistas Vea y New Condado; en las emisoras de radio WAPA, NotiUno, Red 96, Canal 6 y WIPR; en los canales de televisión: CNN en Español, Telemundo, WIPR y WAPA.

Por otro lado, la señora Torres Figueroa no solo ha sido reportera, sino que también ha sido objeto de reportajes noticiosos sobre aspectos de su vida privada. Así, el 23 de agosto de 2013, publicó el siguiente mensaje en la red social de Twitter: "Felizmente embarazada :)", junto a una fotografía de objetos alusivos a un bebé. En esa misma fecha, la página web de WAPA TV publicó la siguiente nota: "Reportera de Noticentro revela su embarazo". Ap. Sol. Cert. CC-2017-0507, pág. 277.

Queda claro que una persona que se dedica al periodismo, meramente por razón de su profesión, no puede ser catalogada como figura pública. Sin embargo, esa no es la controversia que tenemos ante nuestra consideración. En su lugar, la controversia se circunscribe a determinar si la señora Torres Figueroa es una figura pública. En vista de que sí lo es, confirmar

la determinación del Tribunal de Apelaciones es un proceder erróneo.

Claramente, no todos los periodistas gozan del nivel suficiente de reconocimiento para ser catalogados como figura pública. Ahora bien, tampoco debemos titubear en declarar a una periodista como figura pública, solo por temor a que dicha determinación se expanda a toda la clase periodística. Lo anterior presume que todos los periodistas están en las mismas condiciones. Esa aseveración, de su faz, sería incorrecta.

La señora Torres Figueroa es una persona con acceso a canales de comunicación efectiva. Tuvo la oportunidad de responder a las alegadas expresiones difamatorias a través de una publicación del periódico Primera Hora, uno de los principales rotativos de Puerto Rico. En el reportaje se indicó que exigía una disculpa pública del Sr. Fernando Vélez Rivera y del señor Antonio Sánchez. Al respecto, hizo la siguiente expresión: "Ellos utilizaron ese medio para humillarme, arrastrarme y tirarme más abajo del piso. Que sean hombres y me pidan disculpas públicamente". Ap., Sol. Cert. CC-2017-0505, pág. 749. Por su parte, también tomó objeción de las actuaciones de los alegados difamadores e indicó lo siguiente: "Porque trabajo en un medio y soy figura pública no les da derecho a meterse en mi vida personal y a hacer especulaciones". Íd.

La señora Torres Figueroa es una periodista con gran alcance en la comunidad puertorriqueña. La ocupación periodística por sí sola no convierte a una persona en una figura pública. No obstante, el impacto de los medios informativos en nuestra sociedad es un elemento que hay que tomar en consideración al determinar si una persona que ejerce la profesión de periodista es una figura pública. Esto se debe al rol importante de los medios informativos en nuestra sociedad. Como dijimos en Oliveras v. Paniagua Diez, supra:

> En la esfera política, los medios informativos han sido llamados con propiedad "la cuarta rama del gobierno", nombre que describe la función del periodismo como guardián fiel y motivador de las otras tres ramas. El medio tiene poder e influencia en las esferas sociales, políticas y económicas de la sociedad. Debido a que nos proporciona tanta información crucial es en gran parte responsable por la realidad percibida por cada persona y su información. (Citas omitidas). Íd., pág. 264.

Además, afirmamos:

> Los periodistas constituyen un grupo importante en nuestra sociedad, pues recae mayormente en ellos la responsabilidad de averiguar, informar y orientar al público en general sobre los acontecimientos y tendencias en el ambiente nacional e internacional. **Se han tornado en los principales medios a través de los cuales la gente se entera —en adición a sus experiencias inmediatas— de lo que ocurre en el mundo circundante**. (Citas omitidas). Íd., pág. 265.

También señalamos que "[e]l periodismo dinámico y activo del presente no sólo informa la noticia, critica y denuncia, sino que la investiga, participa y la hace".

Íd. En aquella opinión, nos remitimos a las funciones específicas del señor Oliveras. Allí dijimos que "[a]l confrontar la figura de Oliveras en su función de periodista, en particular redactor jefe de deporte —activamente envuelto en el mundo del deporte como espectador, entrevistador, analista y comentarista— observamos que se ajusta a la descripción básica de figura pública". Íd., pág. 264. Sin embargo, el hecho de que un periodista ejerza el rol de entrevistador, analista y comentarista no implica que este sea una figura pública, sin más. De lo contrario llegaríamos a conclusiones erradas como la de que un periodista que comenta y reporta en la publicación más nimia sería figura pública. Por esa razón, enfatizamos:

> Es innegable que el papel que desempeña Oliveras dentro del campo deportivo es uno de verdadera influencia, **llegando a un gran sector de la población** con sus opiniones y críticas. **Que un periodista tenga acceso a un público ávido** de noticias en forma de comentarios, resulta incompatible con la reclamación del *status* de figura privada. (Énfasis nuestro). Íd., pág. 266.

En este punto cabe resaltar que la señora Torres Figueroa fungió como moderadora en: "El Debate", "En caliente con la Jovet", y "Opine Usted". Además de dirigir la discusión en estos programas, en deposición admitió que en el programa "El Debate" parte de su función como moderadora era formular el tema de discusión. Ap. Sol. Cert, pág. 1128. Así pues, ejercía

influencia sobre lo que los espectadores escucharían en el programa.

Además, en su rol de ancla en los noticiarios, la señora Torres Figueroa tiene un atractivo único para el público, hasta tal punto que es tan importante como la noticia misma. A estos efectos se ha expresado:

> Research on television news has shown that its unique appeal to audiences lies in what has been called the "para-social relationship" that viewers come to form with on-air personalities. **Viewers enjoy a kind of "intimacy at a distance" with television news anchors and reporters that seems to be as important as the news itself in audience retention.** A survey conducted by the American Society of Newspaper Editors, for example, found that people had a significantly higher trust in television anchors than in newspaper reporters. Specifically, the study found that while forty percent of respondents rated the honesty and ethical standards of television anchors to be high, only eighteen percent did the same for newspaper reporters. The study suggested that "the trustworthiness of TV anchors seems to be aided by the fact that viewers feel they know them. By contrast, newspaper editors and reporters are less well known." A case could be made that viewers form an even stronger tie with their local television anchors than with the more remote and geographically distant network anchors. (Énfasis suplido). Phyliss Kaniss, Assessing the Role of Local Television News in Elections: Stimulating Involvement or Indifference, 11 Yale L. & Pol'y Rev. 433, 442 (1993).

La señora Torres Figueroa ha laborado en las estaciones de radio y canales de televisión más conocidos en Puerto Rico. En estos, ha discutido temas que atañen asuntos como la criminalidad, la política y la farándula, temas de gran interés en nuestra comunidad. Al ejercer la

función de reportera influencia las opiniones de las personas, aunque sea para alertarlas de algo que ignoraban. Jack Fuller, Valores periodísticos: Ideas para la era de la información, 1ra ed., Miami, Ed. Colonial Press International, Inc., 1996, pág. 87. Cuando ha ejercido el rol de moderadora y entrevistadora ha controlado el flujo de las discusiones de los panelistas y hasta ha formulado los temas de discusión. Ap. Sol. Cert. CC-2017-0507, pág. 1128. Esta trayectoria la convierte en una persona con un acceso particular a los medios de comunicación, que no tiene la figura privada. Debido a esta trayectoria ha asumido el riesgo de estar expuesta al escrutinio público.

No confundamos las decisiones de los foros federales que sostienen que los reporteros son figuras públicas limitadas. Esas determinaciones son distinguibles de este caso.

En Jacobson v. CBS Broadcasting, Inc., 19 N.E.3d 1165 (2014), Jacobson era una reportera conocida en Chicago que realizaba un reportaje de una noticia que tuvo exposición nacional. La noticia versaba sobre la desaparición de una mujer. Mientras realizaba el reportaje, a Jacobson se le tomó una videograbación en la cual salía en traje de baño en el jardín de la casa del esposo de la mujer desaparecida. Este video se publicó en CBS y tuvo cobertura en otros medios como el *Chicago*

*Tribune*. En consecuencia, Jacobson demandó por difamación, pues sostenía que al ver el video el público podría interpretar que sostenía algún tipo de relación con el esposo de la mujer desaparecida. Por su nivel de notoriedad en Chicago, surgió la controversia de si Jacobson era una figura pública. La Corte de Apelaciones de Illinois encontró que, aunque Jacobson gozaba de notoriedad en Chicago, no era una figura pública. Íd., pág. 1177. Pesó mucho en su razonamiento el hecho de que el video hubiese tenido una amplia cobertura nacional, a través de medios como CBS. Íd. En cambio, sostuvo que Jacobson era una figura pública limitada. Su razonamiento fue que como reportera estaba cubriendo una noticia con exposición nacional, y que la difamación estaba relacionada con esa controversia pública. Por eso era una figura pública limitada. Por su parte, en Wayment v. Clear Channel Broadcasting, Inc., 116 P.3d 271 (2005), la Corte Suprema de Utah determinó que la única evidencia que presentaron los demandados estableció las funciones que ejercía como reportera de noticias de salud, mas no incluyeron evidencia de que el público tenga interés en su persona.

En este caso las expresiones fueron realizadas en el programa radial "El Circo", de amplia difusión local. Basta con que la señora Torres Figueroa tenga el nivel suficiente de notoriedad en la comunidad en la cual fue

difamada, es decir, donde la difamación fue publicada. Waldbaum v. Fairchild Publications, Inc., supra, pág. 1295, n. 22. Como hemos sostenido, la señora Torres Figueroa es una persona reconocida, la cual ha ejercido roles con tal grado de exposición que ha creado una influencia en la comunidad. Esta es la misma comunidad en la cual se publicaron las expresiones que se alegan son difamatorias. Surge también del expediente que en este caso el público tiene interés en la persona de la señora Torres Figueroa. Lo anterior se evidencia con la cobertura que se le dio a su embarazo previo a que se realizaran las expresiones supuestamente difamatorias.

Por todo lo anterior, sostengo que debimos resolver que la señora Torres Figueroa es una figura pública para todos los propósitos. Su carrera periodística demuestra que tiene acceso a los medios de comunicación y que ha asumido el riesgo a estar expuesta al escrutinio público. Lo anterior no implica que no puede prevalecer en la acción de difamación, sino que debe demostrar que las manifestaciones supuestamente difamatorias se hicieron con malicia real. Es decir, tendrá que demostrar que las expresiones de los señores Vélez Rivera y Sánchez no solo eran falsas, sino que estos sabían que lo eran o las hicieron con grave menosprecio de la verdad.

RAFAEL L. MARTÍNEZ TORRES
Juez Asociado